Herbert, J.,
dissenting. I fully agree with the statement from the Frankenstein case quoted at the outset of the per curiam opinion. It should be so apparent that Section 4301.13, Revised Code, is constitutional by all the standards since the adoption of the Twenty-first Amendment that further discussion is unnecessary.
The validity of Section 1, Article VII of Regulation 3 of the Board of Liquor Control, presents an entirely different question, however. Granting, also, that the fundamental purpose of the Liquor Control Act is to absolutely control the liquor industry in Ohio as a matter of social and public policy, as stated in the per curiam opinion, it should be noted that at the time of the original passing of the Liquor Control Act future amendments were clearly contemplated. Paragraph (G) of Section 4301.04, Revised Code, provides in substantially the same language as originally adopted:
“The board may submit to the Governor amendments to any laws affecting the sale of intoxicating liquor in this state when it deems desirable.”
The over-all power of the Legislature not being in dispute, we must then look to its intent in the enactment of Section 4301.13, Revised Code. When this act was passed in 1949, it was captioned:
“AN ACT
“To provide for the sale of bottled wine under fair trade regulations and for that purpose to authorize the Board of Liquor Control to adopt such regulations, and to enact supplemental Section 6064-3o.” (Emphasis added.)
This act has not since been amended (although some excess verbiage was stricken when it was recodified as Section 4301.13, Revised Code). It seems obvious, therefore, at least to the writer, that the Legislature did not intend to vest the board with the same broad powers in respect to its functions under this section as it concededly has in its other operations. While the per curiam opinion states that nowhere in the act is there any reference to Ohio or any other “fair trade” legislation, it should be noted that this phrase does not have quotation marks around it in the caption of the act. It would seem to follow, therefore, that the Legislature clearly intended ordinary acceptance of the words.
*69 Coming then to consideration of Article VII of Regulation 3, let us quote the preamble:
“This article is promulgated pursuant to the provisions of Section 6064-3a of the General Code (R. C. 4301.13) to avoid economic and social consequences which flow from unfair competition and improper practices in the sale and distribution of alcoholic beverages. It is hereby declared to be the policy and intent of the board, in promulgating this article to advance the social control of an alcoholic beverage and to stabilize the sale and distribution of bottled wine in Ohio. It is intended to eliminate practices in the sale and distribution of wines in - Ohio tohich cause intemperance and improper usage of bottled wines.” (Emphasis added.)
Had this declared purpose of the Board of Liquor Control been set forth in the legislative enactment, this court would have had before it only the question of the reasonableness of the formula which follows in Section 1 of the Article. The important point, however, on which I dissent from the per curiam ruling is that the Legislature, in its enactment of Section 4301. 13, Revised Code, specifically limited the board in adopting regulations thereunder “to provide for the sale of bottled wine under fair trade regulations.” Citations of authorities can neither add to nor subtract from a conclusion on this point.
The case of Blackman v. Board of Liquor Control, 95 Ohio App., 177, 113 N. E. (2d), 893, apparently was considered to be controlling by the Court of Appeals here. From a reading of that opinion it does not appear that the court there was considering anything other than the power of the board to establish Article VII of Regulation 3. It did not go into the formula devised.
Without going into all the ramifications of the provisions set up in the formula of Section 1, Article VII of Regulation 3, it is quite apparent that the board was being guided by its declared policy “to advance the social control of an alcoholic beverage and * * * eliminate practices in the sale and distribution of wines in Ohio which cause intemperance” when it fixed a 16% bottling cost markup, as admittedly the record before the board in this case establishes by the board’s own witness, an employee, that 12% was adequate as contrasted with the appel *70 lant’s contention that 7% was adequate so far as establishing the fair price.
There are other factors in the formula, such as inclusion of taxes prior to another markup percentage, which, if the article is examined as a fair trade regulation, merit severe criticism, but further discussion of them would be of no avail here. Suffice it to say that the record in this case clearly discloses an artificially rigged price, the effect of which is tending toward the destruction of the wine bottling industry in this state. Such a result, even though unfortunate, would of course be valid if accomplished under clear legislative approval.
In my opinion, not only does the board exceed its power when in the promulgation of this article it goes beyond fair trade considerations in the normal acceptance of those words, but, in the exercise of such power, affirmed by the per curiam opinion here, it has drafted a wholly unreasonable regulation and one which is sadly in need of revision in the light of reality testified to by its own employee, Chief of the Beer and Wine Division.
I am still of the belief that, although the Legislature has complete power to declare the policy of this state with respect to the fixing of retail wine prices, it did not delegate to the Board of Liquor Control, by Section 4301.13, Revised Code, the power to regulate social evils in connection with the wine industry and to eliminate alleged sales practices causing intemperance, and, further, that the Board of Liquor Control here has promulgated a wholly unreal and unreasonable regulation which has resulted in a most unfair trade regulation.
The principles set forth in the case of Weber v. Board of Health, 148 Ohio St., 389, 14 N. E. (2d), 331, could well be cited in support of this dissenting opinion as could also the ruling in the case of Serrer v. Cigarette Service Co., 148 Ohio St., 519, 76 N. E. (2d), 91, even recognizing the distinction that in the Server case the industry sought to be regulated was not operating under privilege by the state.