# Kentucky Alcoholic Beverage Control Board v. Klein et al.

## Same v. Voelcker.

Jan. 29, 1946.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellant.

Steinfeld & Steinfeld for appellees.

Opinion of the Court by Chief Justice Rees— Reversing.

A motion to hear these two appeals together has been sustained since they involve the same questions of law. There is no dispute as to the facts, and we paraphrase the statement of facts in appellees' brief.

Appellees Milton Klein and Rose Klein for several years have been holders of a license to sell alcoholic beverages by the drink at 324 W. Jefferson street, Louisville, Ky. On December 18, 1944, they filed their application for a license to sell alcoholic beverages by the drink at 300 W. Jefferson street, and the application was approved by the Alcoholic Beverage Control

Administrator for Louisville in February 1945. They then applied to R. W. Keown, Distilled Spirits Administrator of the Alcoholic Beverage Control Board of the State of Kentucky, as required by sections 243.370 and 243.380 of the Kentucky Revised Statutes, for approval of the application and issuance of a state license. The Administrator refused to approve the application and to grant the license for the reason that the quota in Jefferson county was full, and for the further reason that the appellees owned another license in the vicinity of the store for which they were applying for the new license. They then appealed to the Alcoholic Beverage Control Board which sustained the Administrator's refusal to approve the application and issue a license because (1) the quota as fixed by the Board for Jefferson county was full and no vacancy existed; (2) Milton Klein owned one liquor license near 300 W. Jefferson street, there were a number of other licensed liquor stores near by, and there was not a sufficient aggregation of population to justify another liquor license in the immediate vicinity; and (3) there were then 236 retail package liquor licenses and 219 retail drink liquor licenses in the city of Louisville, and the Board was of the opinion that this number was sufficient to reasonably supply the demands of the citizens of Louisville and that to increase this number would tend to increase the problem of regulation of licensed liquor stores. From this order the applicants appealed to the Franklin circuit court, which reversed the Board, and the latter has appealed to this court.

Irvin B. Voelcker, appellee in the second-styled appeal, is engaged in the retail drug business at the corner of Clay and Market streets in Louisville. On January 16, 1945, he applied to the Alcoholic Beverage Control Administrator of the city of Louisville for a license to sell alcoholic beverages at retail by the package. The City Administrator refused to approve the application for the reason that the appellee was within 700 feet of similar liquor licensees, which the Administrator held disqualified him from obtaining such license because of regulation LABA—8 of said Administrator, and, further, because of regulation LCS—13 of the Department, which limited the number of licenses which could be issued. Voelcker appealed to the Alcoholic Beverage Control Board which sustained the refusal of

the City Administrator to approve the application and he then appealed to the Franklin circuit court. The order of the Board was set aside, and the Board was ordered to direct the City Administrator to issue the license applied for. The Board has appealed.

The appellees contend that subsection 2 of section 241.060 of the Kentucky Revised Statutes is unconstitutional because it delegates legislative powers to an administrative body, and that the regulations under which the Alcoholic Beverage Control Board refused to approve appellees' applications for licenses are legislative enactments by an administrative agency. They cite numerous cases decided by the Supreme Court of the United States and by this and other state courts which announce the principle that legislative functions cannot be delegated by the Legislature. The principal question presented for our decision is whether the Legislature violated this principle when it enacted Chapters 241, 242, 243, and 244 of the Kentucky Revised Statutes which control the manufacture, sale, transportation and consumption of alcoholic beverages. These four chapters constitute a comprehensive law on the subject. Chapter 241 deals with administration and control, Chapter 242 with Local Option, Chapter 243 with licenses and taxes, and Chapter 244 with restrictions and regulations. KRS 241.015 creates a Department of Alcoholic Beverage Control which shall consist of the Commissioner of Alcoholic Beverage Control and the Alcoholic Beverage Control Board. KRS 241.030 provides that the Alcoholic Beverage Control Board shall consist of the Commissioner and two persons appointed by the Governor, who shall be persons with administrative experience in the field of alcoholic beverage control. The first two subsections of section 241.060, Chapter 241 of the Kentucky Revised Statutes, read:

"The Board shall have the following functions, powers and duties:

"(1) To adopt reasonable regulations governing the procedure relative to applications for and revocations of licenses and relative to all other matters over which the board has jurisdiction, and for the supervision and control of the manufacturer, sale, transportation, storage, advertising and trafficking of alcoholic beverages. Regulations need not be uniform in their appli-

cation, but may vary in accordance with reasonable classifications.

"(2) To limit in its sound discretion the number of licenses of each kind or class to be issued in this state or any political subdivision, and restrict the locations of licensed premises. To this end the board may make reasonable division and subdivision of the state or any political subdivision into districts. Regulations relating to the granting, refusal and revocaton of licenses may be different within the several divisions or subdivisions."

Subsection 8 reads:

"To make rules and regulations, and to provide forms, that may be necessary to regulate the alcoholic beverage industry and to make KRS 244.380 to 244.470 effective."

On June 13, 1944, the Alcoholic Beverage Control Board adopted regulation LCS—13 by which it fixed the number of retail drink and retail package licenses at the number prevailing within the boundaries of each county as of February 8, 1943, the date of the original limitation order. On December 14, 1944, the Board amended the regulation by increasing the quotas for various counties. The quota for Jefferson county was fixed at 276 retail package liquor licenses and 246 retail drink liquor licenses. The quota of each type of license for the city of Louisville was fixed at 200 by order of the City Administrator, and this was approved by the State Board. It is conceded that the quota under both the state and city regulations was exhausted when the Kleins and Voelcker made their applications. The Legislature undoubtedly has the power to limit the number of places at which alcoholic beverages may be purchased by the drink or by the package. As said in Schwierman v. Town of Highland Park, 130 Ky. 537, 113 S. W. 507, 509, "the retail liquor business has always been placed in a class by itself, and dealt with by special laws; so that the reasons that might deny the boards the right to discriminate between persons applying for licenses to engage in any other legitimate occupation and pursuit regulated and controlled by general laws have little or no application to this business. Although recognized legitimate and under the protection of the law, it stands apart from other lawful occupations, and must be treated in a class by itself;" and in Christian Moerlein Brewing

Company v. Roser, 169 Ky. 198, 183 S. W. 479, 481, "it is well settled in this jurisdiction that the trustees or councils of municipalities, where the sale of intoxicating liquors is permitted by law, have a reasonable discretion in determining the places of sale, the number of licenses, and the persons to whom such licenses shall be granted; and when this has been done they may properly refuse to issue any additional licenses, even though there be no objection to the applicants or their proposed places of business." But it is insisted by appellees that this power cannot be yielded to a Board, state or local, by the Legislature. It is universally recognized that wide discretion must be granted to boards and commissions created for the purpose of regulating the liquor business. The nature of the business demands this. In Beacon Liquors v. Martin, 279 Ky. 468, 131 S. W. 2d 446, 448, this court said: "Due to the inherent evils connected with the liquor business, for years it has been subjected to the strictest regulation in this state, as well as all the other states of the Union, as to its manufacture, possession, transportation, sale and use. Regulations, which would be held to be arbitrary and unreasonable when applied to any other business, have been upheld by the courts in an attempt to exercise control over and restriction upon the liquor traffic.'"

As pointed out in Ziffrin, Inc., v. Reeves, 308 U. S. 132, 60 S. Ct. 163, 84 L. Ed. 128, the Kentucky Alcoholic Beverage Control Act is a comprehensive measure and provides for the rigid regulation of the liquor business. It sets forth in broad outlines the legislative policies for controlling the traffic, and necessarily delegates the details to administrative agencies. One of the most effective means to regulate the traffic and to carry out the legislative policies is to limit the number of retail outlets. The number of licenses that should be granted depends on many factors such as density of population, amount of police protection, and the character of territory where the licenses are sought, whether business or residential. These factors vary in different communities and are constantly changing. It would be impossible for the Legislature, which is in regular session only sixty days every two years, to deal in detail with the subject. In Craig v. O'Rear, 199 Ky. 553, 251 S. W. 828, 831, it was argued that a statute was void as a delegation of the functions of the Legislature, and the court said:

"It is next insisted that the act is void as a delegation of the functions of the Legislature. It must not be overlooked that Legislatures are not continuous bodies. As a rule, they are in session for only a few days each year, or every two years, as is the case in Kentucky. Of necessity such bodies cannot undertake to determine all facts incident to the administration of the laws which they enact. Therefore when we say that the Legislature may not delegate its powers, we mean that it may not delegate the exercise of its discretion as to what the law shall be, but not that it may not confer discretion in the administration of the law itself."

Here, the Legislature has exercised its discretion as to what the law shall be, and has delegated to the Alcoholic Beverage Control Board the administration and enforcement of the law. The power to fix quotas, exercised with sound discretion, is part of the administration. Our conclusion that the power conferred by the Board in this respect is not an unlawful delegation of legislative functions is supported by the recent cases of Ashland Transfer Company v. State Tax Commission, 247 Ky. 144, 56 S. W. 2d 691, 87 A. L. R. 534, and Ratliff v. Hill, 293 Ky. 36, 168 S. W. 2d 336, 145 A. L. R. 754. In Keller v. Kentucky Alcoholic Beverage Control Board, 279 Ky. 272, 130 S. W. 2d 821, 824, the constitutionality of the Alcoholic Beverage Control Act was attacked on the ground that it undertook to grant judicial powers to the Board. The following from the opinion in that case is pertinent here:

"Administrative boards and commissions have undoubtedly become an essential part of our governmental structure. That there are both advantages and disadvantages inherent in the system is admitted. That the legislative branches of government have granted to many of those bodies powers which in some respects combine judicial, executive and legislative action, notwithstanding the fundamental separation of the trinity, is not questioned. Our Constitution, Sections 27 and 28, is clear and explicit on this delineation. It is likewise specific in declaring that the judicial power of the commonwealth shall be vested in the Senate and in the courts established by the constitution. Section 109. But agencies must of necessity be established by and through which the state must function in the exercise of the constitu-

tional and police powers, and those agencies must of necessity be given discretion in performing their duties of administering the law and in the matter of promulgating detail rules and regulations. In the Alcoholic Beverage Control Act, the legislature has laid down much more than a skeletonized system and has not left to the Board, created by it, the power and privilege of filling in large gaps. The legislature itself has established the principles and policies and left only details of administration to be supplied by the Board. It has of necessity delegated the execution of the law to the Board and its agents.''

In the Klein case it is argued that, no appeal having been taken from the findings of the City Administrator, the State Administrator was without authority to refuse either to approve the application or to grant the applicants a state license. The application for a city license was approved by the City Administrator, and, consequently, neither party could appeal. It does not follow that the State Administrator was deprived of all power and discretion in the matter. The approval of the application by the City Administrator was a necessary preliminary to obtaining its approval by the State Administrator and to the issuance by him of a state license. When he found that issuance of the license would violate a valid regulation of the Board, he was justified in refusing to approve the application.

The judgment in each case is reversed, with directions to affirm the order of the Board.