THE BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA, A CORPORATION, APPELLEE, V. THE COUNTY OF LANCASTER, NEBRASKA, APPELLANT.

48 N. W. 2d 221

Filed June 7, 1951. No. 32979.

*Frederick H. Wagener, Herbert A. Ronin, Rollin R. Bailey,* and *William L. Schaumberg,* for appellant.

*Cline, Williams, Wright & Johnson,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an action upon a claim filed by the Board of Regents of the University of Nebraska against Lancas-

ter County for drugs and medicines in the amount of $39.97 which were furnished to indigent patients sent to the University Hospital by the county. The trial court found for the plaintiff and entered judgment against the county for $39.97 and costs. The defendant county appeals.

The facts are not in dispute. The question raised is whether the plaintiff may charge the county for expensive drugs and medicines furnished by the University Hospital to indigent patients sent to the hospital by the county pursuant to the rules adopted by the Board of Regents governing the admission of indigent patients to the hospital.

The general government of the University of Nebraska is vested in a board of regents, subject to the direction of the Legislature. Art. VII, § 10, Constitution of Nebraska. As such, it is charged with the management and operation of the university, including the College of Medicine and the University Hospital. § 85-107, R. R. S. 1943; § 85-172, R. R. S. 1943. The Legislature has specifically authorized the Board of Regents to prescribe rules for the admission to and discharge from the University Hospital, the medical and surgical care of indigent patients sent to the University Hospital by the county authorities of the counties of the state, and to take all other needful measures to promote the efficiency of the hospital. § 85-172, R. R. S. 1943. Pursuant to this authority the Board of Regents adopted a rule which provides: "Worthy sick, except as hereinafter specified, shall be admitted upon receipt by the hospital authorities of a written application which shall state, among other things, that the patient is in need of medical care or surgical attention and that he is unable to pay for professional services, board or nursing while in the hospital. The application must be signed by the Board of County Commissioners or Supervisors of the county in which the patient resides or by a representative of the Board duly authorized to sign the same in its be-

half. Said application shall be accompanied by a certificate of a legally licensed physician or surgeon of Nebraska, stating that the patient is in need of medical care or surgical attention. That for the purpose of providing necessary funds to defray the cost of certain kinds and types of new drugs, medicines and treatment, including antibiotics such as penicillin, streptomycin, aureomycin, chloromycetin; intravenous fluids such as glucose, Ringer solution, protein solutions and others; oxygen, vitamins and related products; anesthetic gases and such other similar kinds and types of drugs, medicines and forms of treatment, necessary for the proper care of indigent patients admitted to said hospital from any county in the State of Nebraska,— the Dean of the College of Medicine of the University of Nebraska is authorized to charge the county from which such patient or patients are admitted all of the cost, or such part thereof as remains unpaid by the patient at the time of his discharge, of such drugs, medicines and treatment furnished to such indigent patients. The Dean of the College of Medicine is empowered to determine what additional kinds and types of other new and expensive drugs, medicines and treatment, similar in character, shall be included within this rule. No indigent patient shall be admitted to said hospital from any county except upon condition that the county shall pay the cost of such new and expensive drugs, medicines and treatment which are not paid by the patient at the time of his discharge." The record shows that each county of the state was duly notified of the adoption of the foregoing rule and that the claim here made is for new drugs and medicines necessary for the care of indigent patients entering the hospital after notice of the adoption of the rule had been given to Lancaster County.

It is the contention of the county that the rule promulgated by the Board of Regents is invalid for the reason that it is beyond the scope of the delegation of

power contained in section 85-172, R. R. S. 1943, and, in any event, such section is void in that it purports to grant legislative powers to an administrative agency of the state.

We think it is within the power of the Legislature to delegate authority to the governing body of the university to make rules pertaining to the admission and discharge of indigent patients who, at the instance of county authorities, desire to make use of the facilities of the University Hospital. The rule made was germane to the efficient operation of the hospital and clearly within the range of the rule-making power contemplated by the Legislature when it enacted section 85-172, R. R. S. 1943. It is clearly evident that the Legislature never intended that all indigent patients could use the facilities of the University Hospital as of right. The purpose of the hospital was dual in character—to provide training for medical students and to treat indigent patients sent to them by the county authorities of the state. It was not the intent of the Legislature to relieve counties of their responsibilities to the indigent sick. It was only to the extent that the hospital could assume such responsibility that its facilities were made available to the counties of the state as an aid to the care of indigent patients. The necessity for rules governing the admission, care, and discharge of such patients was immediately evident to the Legislature. The power to make such rules was delegated to the Board of Regents. The rules are necessarily based upon the findings of facts, existing conditions, and available facilities. We think it was a proper exercise of legislative power to delegate to the Board of Regents the authority to find the facts and make the rules based thereon necessary to the efficient operation of the hospital to accomplish the purposes for which it was established. The rules made bear directly upon this subject and, being within the range of the powers delegated, they must be sustained unless found to be unreasonable and arbitrary. A rule

which provides for the payment by the county for new drugs and medicines furnished to indigent patients residing in such county, without profit to the Board of Regents, as a condition to the admission of the patient to the hospital, is not unreasonable or arbitrary, nor does it violate Article II, section 1, or Article III, section 1, of the Constitution of Nebraska. The relief from such a rule must come from the Legislature and not the courts.

The county relies upon Smithberger v. Banning, 129 Neb. 651, 262 N. W. 492, 100 A. L. R. 686. The case is not comparable to the situation presently before us. There the Legislature sought to delegate its powers to an outside agency by appropriating $4,000,000 without providing any rules or standards for its expenditure. In the case before us the purposes are expressed in the statutes on the subject. Section 85-172, R. R. S. 1943, makes it the duty of the Board of Regents, an administrative agency of the state, to make the rules by which the purpose of the statute may be expeditiously accomplished. A legislative enactment may properly confer general powers upon an administrative agency and delegate to the agency the power to make rules and regulations covering the details of the legislative purpose. The courts generally hold such rules to be valid except where they are not germane to the purposes of the act, or where they are unreasonable and arbitrary. Foley v. Benedict, 122 Tex. 193, 55 S. W. 2d 805, 86 A. L. R. 477; Griffin v. Gass, 133 Neb. 56, 274 N. W. 193; Lennox v. Housing Authority of City of Omaha, 137 Neb. 582, 290 N. W. 451. In the last case cited we said: "It must be borne in mind that it is for the legislature to determine what the law shall be; to create rights, duties and powers, and provide the general mode of conduct to be followed. This does not mean that the legislature must lay down a strict rule which must be followed by an administrative officer or board, but that such persons or boards may be vested by the legislature within rea-

sonable limits with the exercise of judgment in carrying out the expressed legislative purpose of the act. To ascertain and determine whether a certain area is unsanitary and substandard within the meaning of the act is an administrative function. The other functions prescribed in subdivison (b) are likewise rights, duties and powers properly delegated to the housing authority as the administrative agency. It cannot be seriously disputed that the legislature is clothed with power to delegate to administrative boards and agencies of the state the power of ascertaining the facts upon which the laws are to be applied and enforced. It may also authorize the doing of specific acts necessary to the furtherance of the purposes of the act. Such delegations of power and authorizations of acts do not transcend constitutional inhibitions so long as the law-making power is wholly reserved to the legislature and no part thereof has been delegated to any other governmental subdivision, board or agency."

The exercise of a legislatively-delegated authority to make rules to carry out an expressed legislative purpose, or for the complete operation and enforcement of a law with designated limitations, is not an exclusive legislative power. It is administrative in its nature and its use by administrative agencies is usually essential to the complete and wise exercise of the power in the accomplishment of the purpose which the Legislature intended. Consequently, the courts are not inclined to interfere with rules established by legislative direction where they bear a reasonable relation to the subject of the legislation and constitute a reasonable exercise of the powers conferred. The rule here involved is not violative of any legislative act and meets all other requirements of the exercise of the rule-making power by an administrative agency. The trial court was correct in so holding and the judgment entered for the plaintiff is therefore affirmed.

AFFIRMED.