**BLACKMAN, Appellant, v. BOARD OF LIQUOR CONTROL, Appellees.**

Ohio Appeals, Second District, Franklin County.

No. 4707.   Decided April 29, 1952.

Simon L. Leis, Cohen & Baron, Cincinnati, for appellant.
Aaron T. Grad, Leon L. Wolf, Cincinnati, Amicus Curiae.
Isadore Topper, Columbus, for The Ohio Wholesale Wine Dealers Association, Amicus Curiae.
C. William O'Neill, Atty. Genl., Brown W. Pettit, Asst. Atty. Genl., Columbus, for appellees.

### OPINION
By HORNBECK, PJ.
This is an appeal on questions of law from an order of the

Common Pleas Court sustaining an order of appellee Board suspending the C-1 and C-2 permits of appellant because of a violation of Regulation 3, Article 7 of Rules and Regulations promulgated by appellee Board. Hereafter we refer to the appellees as the Board.

Appellant was charged with violating the regulation of the Board fixing the minimum price for the sale of wine in that on two occasions he had sold wine below the established price. The sales are not disputed but it is claimed that they were made with no purpose to violate the regulation. No claim of the invalidity of the rule was urged before the Board.

The contention of appellant here is twofold: One, that §6064-3a GC, upon which the Board bases its authority to promulgate its Regulation 3 of Article 7, is unconstitutional and void in that it delegates legislative authority to the Board and sets up no standard by which such authority may be exercised; Two, that the rule is invalid, because arbitrary and unreasonable.

Sec. 6064-3a GC in so far as applicable provides:

"The board of liquor control shall have the power to adopt, promulgate, repeal, rescind and amend rules and regulations to regulate the manner and method of dealing in and distributing and selling bottled wine within the State. The board of liquor control may require out-of-state producers, shippers, bottlers and holders of federal importers' permits shipping bottled wine into Ohio and holders of class A-2, B-5, B-3 and B-2 permits issued by the department of liquor control engaged in distributing and selling bottled wine in Ohio, to file with the department of liquor control a schedule of prices in which minimum prices are set forth for the sale of bottled wine at wholesale or retail, or both, in Ohio.

\* \* \* \*

"The board of liquor control may determine and fix the minimum mark-ups at wholesale or retail, or both, for bottled wine, and fix the minimum prices at which the various classes of bottled wine shall be distributed and sold in Ohio either at wholesale or retail, or both."

Section 10 of Article 7 of Regulation 3 of the Board provides:

"The consent to import wine and/or the permit of any permit holder, salesman or representative who advertises, offers for sale, ships, sells or buys bottled wine at a price less than that fixed by the Board or stipulated in an approved statement or price schedule, or who violates any provision of this Regulation, may be suspended or revoked, by the Board."

Appellant insists that §6064-3a GC expresses no legislative policy respecting the fixing of minimum prices for which wine may be sold in Ohio, but that this policy which is strictly

legislative is delegated to the Board of Liquor Control and in contravention of **Section 1, Article II of the Constitution of the State of Ohio.**

The legislative purpose to require the fixing of minimum prices at which wine shall be sold in Ohio is implicit in the language of the section. It is evident that those who handle wine for sale in the course of business do so for the purpose of making a profit. To make a profit there must be a mark-up, if the wine be sold either at wholesale or retail.

When, then, the Legislature provided that the Board of Liquor Control may determine and fix minimum mark-ups and minimum prices, it was tantamount to declaring the legislative purpose that there should be mark-ups and that there should be minimum prices for the sale of wine.

The next contention of the appellant is that the section of the Code under consideration did not fix standards and rules for the guidance of the Board in fixing mark-ups and minimum prices. If it is requisite to the validity of the legislation that such standards be set forth in it, it must be conceded that they are not to be found in the section and it would, therefore, be unconstitutional.

In 1936, this Court considered the case of Cody v. Leonard, et al., Franklin, unreported, and a majority of the Court held that the defendants, members of the Ohio Liquor Control Board, should be enjoined from enforcing its Regulation No. 43 relating to advertising on the outside of premises operated by permittees. This case involved the construction of **subdivision (f) of §6064-3 GC.** The majority held that the section did not set forth any declaration of policy by the Legislature on the subject of advertising. The section provides:

"That the Board of Liquor Control shall have power (1) to adopt and promulgate, * * * rules, regulations, * * * necessary to carry out the provisions of this act including the following:

"(f) Uniform rules and regulations governing all advertising with reference to the sale of beer and intoxicating liquor throughout the state and advertising upon and in premises licensed for the sale of beer or intoxicating liquor."

One member of the Court dissented in a short opinion in which was cited Mutual Film Corp. v. Industrial Commission of Ohio, 236 U. S. 230; Annotation to State, ex rel. Makris v. Superior Court (Wash.) 12 A. L. R. 1453; State, ex rel. Altop v. Billings (Mont.), 54 A. L. R. 1115 and American Baseball Club v. Philadelphia (Pa.) 92 A. L. R. 418. The Supreme Court, **132 Oh St 329,** in the **Cody case,** reversed this Court and supported the action of the Board of Liquor Control. Judge Wil-

liams writing the opinion, at pages 331, 332 of the opinion, after citing Matz, Admr., v. J. L. Curtis Cartage Co., 132 Oh St 271, with approval, said:

"It is apparent that according to the great weight of authority the Legislature may confer upon administrative boards power to adopt subordinate rules, administrative in character, where the Legislature in conferring the authority has fixed definite standards and rules of guidance. But the rule relaxes somewhat as to the necessity for such limitations and restrictions, where wide power is imperative in law enforcement; and many authorities have held that standards or criteria for guidance are not necessary in cases in which the discretion to be exercised by administrative officers relates to police regulations in the protection of the public morals, health, safety or general welfare."

That the sale of intoxicating liquors comes within the category of a business the conduct of which if not closely regulated is inimical to good morals and the public welfare is not a debatable question. The note to State, ex rel. Makris v. Superior Court, supra, 12 A. L. R. 1453, under the heading "Discretion with respect to matters of mere privilege," reads:

"It has been declared that where the discretion relates to a businss the carrying on of which is a mere matter of privilege because of a character tending to be injurious, rather than an ordinarily lawful business the carrying on of which creates a property right or vested interest, such, for instance, as dealing in intoxicating liquors, arbitrary discretion as to the granting of licenses may lawfully be delegated to public officials, without prescribing definite rules of action."

Then follows a number of cases supporting the headnote to the annotation. The other cases which we have cited are continuations of the annotations in 12 A. L. R. It is upon this principle that we rest our conclusion that the legislation under review is valid against the contention that no standards are set up by which it may be effectuated. This view is not in accord with the opinion in Levine v. O'Connell, et al., 88 N. Y. Supp. (2d) 672.

Of course, the action of the administrative body in which is reposed discretionary power is always subject to the test if it is reasonable or unreasonable. If unreasonable, the action may be invalid or it may be unconstitutional.

Appellant relies heavily upon the case, Schwegmann Bros. v. Louisiana Board of Alcoholic Beverage Control, 216 A. L. R. 148, 43 So. (2d) 248, the judgment in which, as we read the opinion, was predicated mainly upon the proposition that the legislation under consideration was unreasonable under all

the circumstances and that the means adopted by the Legislature in the exercise of its police power was not reasonably necessary and appropriate to the accomplishment of the object announced in the statute.

The Justice writing the opinion at page 259 thereof, says:

"From all of which we conclude that the provisions of Act 360 of 1948 which relate to the mandatory minimum mark-ups (Sections 1(s), 24 and 26) do not tend, in a degree that is perceptible and clear, toward the accomplishment of the announced purpose of the statute, namely the regulation and control of the liquor traffic so that it 'may not cause injury to the economic, social and moral well-being of the people of the State.' They, in other words, are inappropriate for the achievement of the legitimate object described in the statute. Accordingly, we hold that such provisions are manifestly unreasonable within the contemplation of the state's police power, and, hence, are unconstitutional in that they violate the due process clauses of our state and federal constitutions."

The Court tested the purposes of the legislation upon the statement of appellants, strikingly similar to those asserted by the appellees in this case,

"that the minimum mark-ups are designed, in the interest of temperance, to protect the people from the temptations of cheap liquor due to cutthroat competition; to eliminate excessive consumption of strong drink that results from price wars; and to prevent certain moral abuses brought about by low liquor prices,"

and the Court resolved them as we have heretofore indicated. As a matter of legislative policy strong, moving reasons could be advanced to the effect that the removal of all price control on the sale of all intoxicating liquors and the permission to make and to sell such liquors at the lowest price which in competition could be afforded, might do more to advance the cause of temperance than minimum price fixing. However, we have always understood the law to be that Courts would not question the right of the Legislature to determine policy so long as, in its most favorable aspect, the legislation enacted bears some reasonable relation to the object to be accomplished.

With all deference to the majority opinion in the Schwegmann case which is a strong presentation of the rules controlling the valid exercise of the police power within the concept of constitutional law, we are more in accord with the conclusion reached by the dissenting opinion of McCaleb, Justice, wherein he concludes that the legislation involved in the action should be supported. Both opinions concede that

the police power to be exercised by the Legislature may not infringe upon any of the inalienable constitutional rights secured by the State Constitution or by the 14th Amendment to the Constitution of the United States.

That the State may regulate rates or prices of a business ■ affected with a public interest is held in German Alliance Ins. Co. v. Lewis, 233 U. S. 389, 34 Sup. Ct. Rep. 412; Olsen v. Nebraska, 313 U. S. 236; Nebbia v. New York, 291 U. S. 502, 54 Sup. Ct. Rep. 505. In German Alliance Ins. Co. v. Lewis, supra, the Court held, 2nd syllabus:

"The business of fire insurance is so far affected with a public interest as to justify legislative regulation of its rates."

Justice McKenna writing the majority opinion made some observations which are pertinent here. At page 620, 34 Sup. Ct.:

"What makes for the general welfare is necessarily in the first instance a matter of legislative judgment, and a judicial review of such judgment is limited.

      \*          \*          \*          \*

"Whether the enactment is wise or unwise, whether it is based on sound economic theory, whether it is the best means to achieve the desired result, whether, in short, the legislative discretion within its prescribed limits should be exercised in a particular manner, are matters for the judgment of the legislature, and the earnest conflict of serious opinion does not suffice to bring them within the range of Judicial cognizance." Chicago, B. & Q. R. Co. v. McGuire, 219 U. S. 540, 569, 55 L. Ed. 328, 339, 31 Sup. Ct. Rep. 259.

The statute under consideration was an act of the State of Kansas entitled, "An act relating to fire insurance," etc. The discretion vested in the Superintendent of Insurance was unusually broad. For instance, Section 3:

"When the superintendent shall determine any rate is excessive or unreasonably high, or not adequate to the safety or soundness of the company, he is authorized to direct the company to publish and file a higher or lower rate, which shall be commensurate with the character of the risk; but in every case the rate shall be reasonable."

Counsel for appellant also relies upon Schwegmann Bros. v. Calvert Distillers Corp., 341 U. S. 384, 71 Sup. Ct. 745. This case involved the construction of the Louisiana Fair Trade Act which was held unconstitutional in so far as it undertook to enforce price fixing not only against parties to a contract so providing but also against nonsigners. This opinion was strictly an adjudication of the validity of a fair trade act and if the instant case involved the application of the Ohio Fair

Trade Act, §6402-2 to 6402-9 GC, we would have a different and a more serious question than is presented here.

We do not interpret the cited case as invading the field of the power of the State Legislatures under enabling constitutional provisions to fix prices in furtherance of the regulation of the traffc in intoxicating liquors. The cited case must be read in the light of the issue which was presented and decided.

It is finally urged that the rule of the Board here under consideration is arbitrary and unreasonable in that the minimum wholesale price established is wholly arbitrary and artificial and bears no relation whatsoever to the cost of the wholesaler, nor, does it differentiate between the varying costs of wholesalers engaged in the same business and that the minimum base cost is arbitrarily determined without consideration of vital factors incident to such costs. We do not find in the record any evidence to develop this aspect of the appeal.

The case of **Serrer v. The Cigarette Service Co., 148 Oh St 519**, if it could be given full application to that aspect of Rule 3 which is sought to be urged by appellant might raise a substantial question as to the reasonableness of Regulation 3 of Article 7.

Counsel for parties have filed voluminous briefs in which every aspect of this appeal is explored and developed. Many of the cases cited require no discussion because of the limit which we place upon the number of controlling questions presented. We are also mindful that, possibly, this case has but reached this Court on its way to our Supreme Court and possibly to the Federal Courts. While this development in nowise lessens the obligation of this Court to carefully consider and adjudge all determinative questions, it does argue strongly against any prolonged opinion here. Although we pass on all questions briefed we doubt if they are properly before this Court. The **Village of Clarington v. Althar, 122 Oh St 608**.

Indulging the presumption in favor of the validity and constitutionality of §6064-3a GC and Regulation 3, Article 7, drafted pursuant to such statute, **State, ex rel. Ach v. Braden, 125 Oh St 307**, and giving weight to the broad power granted to the Legislature to regulate traffic in intoxicating beverages, we affirm the judgment under review.

WISEMAN and MILLER, JJ, concur.