William BOEHL, Bill Ray, and Ernest Parsons, constituting the Alcoholic Beverage Control Board; Department of Revenue; John L. Rader, Attorney General; James Martin Fitzgerald, Commissioner of Public Safety; and Jack Davis, Executive Director of the Alcoholic Beverage Control Board, Appellants,

v.

SABRE JET ROOM, INC., Pruhs and Fivey, Inc., and Morry Shkolnik, Appellees.

No. 17.

Supreme Court of Alaska.

Feb. 2, 1960.

John L. Rader, Atty. Gen., for appellants.

Wendell P. Kay, Anchorage, and Warren A. Taylor, Fairbanks, for appellees.

Before NESBETT, C. J., and HODGE and DIMOND, JJ.

DIMOND, Associate Justice.

The legislature has given to the Alcoholic Beverage Control Board full power, authority and control to regulate the manufacture, barter, sale and possession of intoxicating liquors. The principal question to be determined is whether the statute furnishes adequate standards or criteria to support a closing hour regulation.

Alaska permits the sale of intoxicating liquors.[1] But there are conditions imposed. One must be licensed in order to engage in this business. The number of licenses is limited to a population ratio of one type of each license for each fifteen hundred population within a given five-mile radius. Requisites of filing, form and contents of applications for licenses are prescribed. Liquor may not be sold or given to minors or to intoxicated persons, and these classes are forbidden to be present on licensed premises. A liquor store or saloon may not be located within a prescribed distance from schools and churches. Violations of the act may result in license revocation or suspension. And there are other restrictions and limitations.

1. Sections 35–4–1 et seq., A.C.L.A.1949, as amended by Ch. 197, S.L.A.1959.

The act also creates an Alcoholic Beverage Control Board, consisting of three members appointed by the governor and confirmed by the legislature. With respect to the manufacture, barter, sale and possession of alcoholic beverages, the board is given "full power, authority and control", and has the duty and authority to prescribe rules and regulations consistent with the act.[2]

On September 30, 1959, following public hearings conducted under the Administrative Procedures Act,[3] the board adopted a series of twelve regulations.[4] One of them (No. 4070) prescribed standard closing hours for liquor establishments: between 3:00 a. m. and 8:00 a. m. on weekdays; from 4:00 a. m. to 2:00 p. m. on Sundays; and between 4:00 a. m. and 8:00 a. m. on holidays. In a suit for injunction and declaratory relief, appellees have challenged the validity of these regulations—in particular, that relating to closing hours. The court below agreed with appellees: on November 20, 1959, it entered a summary judgment in their favor, holding that all of the regulations were unlawful and invalid.

■ We hold that the lower court went too far. The affidavits in support of appellees' motions for a preliminary injunction and for summary judgment (which constitute the only evidence in the case) relate solely to alleged damage if the closing hour regulation is enforced. There is nothing in the record indicating that the other eleven regulations had any effect on the status of appellees or the conduct of their businesses. They did not, for example, confront appellees with the dilemma of either complying and thus giving up the chance to challenge, or not complying and risking criminal penalties. There was no substantial adverse effect, either present or imminent. Therefore, these regulations were not

subject to challenge, and the sweep of the judgment was too broad. That is why, on the motion of appellants, this court granted a stay—the effect of which was to suspend the judgment and restore the board's ability to function during the pendency of the appeal. Thus, the judgment appealed from will be considered only so far as it relates to regulation No. 4070, prescribing standard closing hours for liquor dispensaries.

The basis of the district court's decision was that the act did not contain adequate standards to support the delegation of power to the board. With the exception of that part of the statute giving the board authority to issue, revoke, transfer or suspend all licenses "in the best interests of the public",[5] it is true that the act contains no standards expressed as such. The board is not specifically directed, for example, to extend its regulatory power to the times of operation of liquor dispensaries. There is simply conferred upon it the broad generalized power to "effectuate and carry out the purpose" of the act,[6] and that "purpose" is to regulate and control alcoholic beverages. The question is whether anything more specific is required in order that the board's authority may be said to extend to the subject of closing hours, and in order that the delegation of power may be considered to be valid.

1. *The Scope of the Board's Authority.*

■ We hold that the regulation adopted was within the scope of the authority conferred. The board is "vested with the duties, powers and responsibilities involved in the control of alcoholic beverages";[7] its duty is to "prescribe rules and regulations * * * governing the manufacture, barter, sale, and possession of intoxicating liquors";[8] in this area it has "full power, authority and control";[9] it has been granted authority "to promulgate necessary rules

2. Sections 35–4–2, 35–4–3, as amended.

3. Ch. 143, S.L.A.1959.

4. Regulations of Alcoholic Beverage Control Board, Ch. 4, Secs. 4040 et seq. [Alaska Administrative Code, Title 15, Ch. 4, pp. 15–4–1 et seq.]

5. Section 35–4–3(B), as amended.

6. Section 35–4–3(E), as amended.

7. Section 35–4–1(A), as amended.

8. Section 35–4–2, as amended.

9. Section 35–4–3(A), as amended.

and regulations to effectuate and carry out the purpose"[10] of the statute; and such regulations "have the full force and effect of law."[10]

The board's authority in this field is complete. It has everything needed to justify the regulation adopted. To hold otherwise would be to say that the language of the statute does not mean what it says.

■ The regulation and the law are not inconsistent.[11] The grant of power is so complete that there would be inconsistency only if the regulation bore no reasonable relation to the statutory objectives. That such a relation exists is obvious. Forbidding the sale of liquor for certain hours each day is directly associated with controlling or regulating its barter and sale.

It is unnecessary, therefore, to find in the statute express mention of the right to limit the hours of operation of liquor dispensaries.

## 2. Delegation of Legislative Power.

The legislative power of the state "is vested in a legislature."[12] It is argued that because of this constitutional provision the power may not be delegated.

■ But such a strict theory of separation of powers ignores realities and the practical necessities of government. The United States Supreme Court has said that delegation by Congress has long been recognized as necessary in order that the exertion of legislative power does not become a futility,[13] and that necessity fixes a point beyond which it is unreasonable and impracticable to compel the legislature to prescribe detailed rules.[14]

Nor does this theory find support in the constitution. There provision is made for creation by the legislature of regulatory agencies that are not under the supervision of the executive.[15] Such agencies would obviously have the function of exercising authority and control in places where the legislature has decided not to exercise all the authority and control itself. This would be a delegation of legislative power and the constitution provides for it.

The real question, then, is not whether there may be a delegation. Rather it is how far the legislature may go in delegating power to an agency charged with the duty of regulation in the field of intoxicating liquor.

Broad administrative control in this sphere of activity has been the rule in Alaska. In 1933 the Territorial Legislature created a Board of Liquor Control and imposed upon it the duties (1) of prescribing rules and regulations to govern the manufacture, barter, sale and possession of intoxicating liquors, (2) of prescribing the qualifications of those engaged in that business, and (3) of prescribing license fees and excise taxes.[16] This Board was given "full power, authority and control" in this field until such time as the legislature might enact laws that would provide for and supersede the powers, duties and functions thus delegated to the Board.[17]

Congress ratified and approved this legislation in 1934, stating that the Board "shall have the powers and authority conferred upon it" by the 1933 statute.[18] In addition, Congress at the same time extended the legislative power of the Territory to include any legislation pertaining to the manufacture or sale of intoxicating liquors, and stated that the Alaska Legislature should have "full power and authority to delegate

10. Section 35–4–3(E), as amended.

11. Section 35–4–2 says that the board's duty is to prescribe rules and regulations "consistent with this Act * * * ". (Emphasis added.)

12. Alaska Constitution, Art. II, § 1.

13. Sunshine Anthracite Coal Co. v. Adkins, 1939, 310 U.S. 381, 398, 60 S.Ct. 907, 84 L.Ed. 1263, 1274.

14. American Power & Light Co. v. S. E. C., 1946, 329 U.S. 90, 105, 67 S.Ct. 133, 91 L.Ed. 103, 116.

15. Alaska Constitution, Art. III, §§ 22, 24, 26.

16. Sections 35–4–1, 35–4–2, A.C.L.A.1949 [Ch. 109, S.L.A.1933].

17. Section 35–4–3.

18. Act of April 13, 1934, 48 Stat. 584, 48 U.S.C.A. § 293.

the powers hereby conferred to any board or commission designated or created by the legislature for such purpose * * * " [19].

In 1937 a law was enacted "to provide for the manufacture and sale of intoxicating liquors in the Territory of Alaska." [20] In 1953 the legislature repealed the 1933 statute which had created the Board of Liquor Control and given it the powers that it had.[21] Then in 1957 the entire law was rewritten. A new Board of Liquor Control was created and was given the same broad powers and duties that were later conferred upon its successor, the present Alcoholic Beverage Control Board.[22] The 1957 Board exercised its regulatory powers by establishing uniform closing hours for liquor dispensaries in municipalities. Such a regulation was adopted on September 3, 1957, and then amended on December 22, 1958. When the existing board was established by the 1959 act, there were transferred to it "the functions and authority heretofore performed and exercised by the Board of Liquor Control * * * " [23].

This, briefly, is the history of liquor control in Alaska since 1933. We refer to it in order to point out that the first state legislature in 1959 did not establish any novel concept in giving to a regulatory agency full authority to control and regulate traffic in alcoholic beverages. What was done by the present statute was simply a recognition and affirmation of a policy that had been in existence for many years. This was not an uncharted field. The legislature was dealing—not with unprecedented problems of a new industry—but with a single type of enterprise and with problems that are as old as the memory of man.[24]

Such a course of proceeding, so consistently followed, has a reasonable basis. The legislature was dealing with a business which, unlike other commercial enterprises, possesses the capacity for grave and harmful effects upon the public welfare. It is a matter of common knowledge that lack of restraint in this field is almost invariably damaging to the community. It is because of this that there may be either complete prohibition, if the legislature chooses to follow that course, or if not, that there may be conditions imposed which will have the tendency to afford the greatest degree of protection to the citizens of the state.[25]

It is because of this close relation to public welfare that fewer specific standards or criteria for the guidance of administrative officials are required. Where the police power of the state is so vitally involved, as it is here, it becomes imperative that those who are charged with the duty of regulating the industry have a freedom of action not restricted by limitations that may be required where other types of businesses are involved.[26]

It would be unreasonable to require that the statute set forth the details of specific regulation that would be permitted. The law recognizes private interests. But it also makes it abundantly clear, from the degree of regulation imposed by the legislature itself, that the primary concern was for the protection of public interests. In a field so closely related to the welfare of the public, the members of the legislature could not be expected to foresee and make provision in advance for all the varying conditions that might arise from time to time and which would require additional

19. Ibid, 48 Stat. 583, 48 U.S.C.A. § 292.

20. Section 35–4–11 et seq., A.C.L.A.1949 [Ch. 78 S.L.A.1937].

21. Ch. 43, S.L.A.1953.

22. Ch. 131, S.L.A.1957, as amended by Ch. 197, S.L.A.1959 [Sections 35–4–1 et seq., A.C.L.A.1949 Cum.Supp.].

23. Ch. 197, Sec. 1, S.L.A.1959 [Section 35–4–1(A) Cum.Supp.].

24. See Fahey v. Mallonee, 1946, 332 U.S. 245, 249–250, 67 S.Ct. 1552, 91 L.Ed. 2030, 2036–2037.

25. See Crowley v. Christensen, 1890, 137 U.S. 86, 11 S.Ct. 13, 34 L.Ed. 620.

26. Cf. Ackerman v. Kogut, 1951, 117 Vt. 40, 84 A.2d 131, 136; Blackman v. Board of Liquor Control, 1952, 95 Ohio App. 177, 113 N.E.2d 893, 895; Mazza v. Cavicchia, 1954, 15 N.J. 498, 105 A.2d 545, 549.

control in order that public and private rights might be properly accommodated. The grant of general rule-making power was necessary in order that the legislative objective would not be frustrated.[27]

The legislature, therefore, formulated policy as far as it considered expedient, and then gave to the regulatory board the function of determining what additional rules of conduct were needed—giving proper regard both to private rights and the vital public concern. The lawmaking function has been performed by the legislature to an extent sufficient to resist the challenge that there has been any invalid delegation of legislative power.

It also is not essential, in order to sustain the grant of authority, that the legislature circumscribe administrative discretion by express standards of action in order that the opportunity for capricious exercise of power will not exist. There is slight danger of that. The exercise of the board's powers is hedged about by substantial safeguards. Before the board may act it must conduct a public hearing and afford any interested person the opportunity to be heard, and it must then consider all relevant matter presented to it.[28] There is ample opportunity for judicial review; for "any interested person may obtain a judicial declaration as to the validity of any regulation."[29] Finally, there is legislative supervision. The legislature, which meets annually, may revise the statute and thus restrict the bounds of administrative action; it has the power by resolution to annul any agency or department rule or regulation; and the Legislative Council, an interim legislative committee charged with the duty of making recommendations to the legislature, must annually review all agency regulations to determine if the legislative intent is being correctly followed.[30]

This provides a sufficient deterrent to an abuse of power. Literally, there may be opportunity for arbitrariness, but there is little likelihood that it will exist in fact. Slight protection against wanton action would be afforded by insisting that there be a more explicit declaration of legislative policy, or that the board's powers be confined within more restrictive limits. Therefore, it is sufficient that the board has been given the authority to effectuate the purpose of the act, amply expressed throughout, which is to regulate and control traffic in alcoholic beverages in the public interest.

The Administrative Procedures Act does not require that explicit standards of action be set forth in the statute. That act says that in order for regulations of administrative agencies to be effective they "must be within the scope of the authority conferred and *in accordance with standards prescribed by other provisions of law.*" (Emphasis added.)[31] The underscored words mean nothing more than *if* standards are prescribed by provisions of law other than those contained in the Administrative Procedures Act, then they must be recognized and adhered to. This language does not mean that regulations cannot be validly adopted by an administrative agency "unless" standards have been prescribed.

Finally, appellees argue that the board has been given the power to create crimes by reason of the provision in the statute that a violation of the board's rules or regulations constitutes a misdemeanor.[32] It is said that this is wrong because such power is strictly a legislative function and cannot be delegated.

There has been no such delegation. The legislature has said that any person who shall violate any of the rules or regulations prescribed by the board "shall be deemed guilty of a misdemeanor, and upon

27. See American Trucking Associations v. United States, 1953, 344 U.S. 298, 309–311, 73 S.Ct. 307, 97 L.Ed. 337, 355–356.

28. Administrative Procedures Act, Ch. 143, Art. IV, §§ 5–7, S.L.A.1959.

29. Ibid.—Art. V, § 1.

30. Ibid.—Art. VII, § 1.

31. Ch. 143, S.L.A.1959, Ch. 1, Art. I, Sec. 4.

32. Section 35–4–6, as amended.

conviction thereof shall be punished as provided in Section 35–4–20 herein." [33] The legislature and not the board has made a violation of the regulations a crime. The statute and not the board fixes the penalty. Sanctions for enforcement of regulations are not created by administrative fiat, but are created by law.[34] Thus, the problem raised by appellees does not exist in this case.

The delegation to the board is a valid one. The regulation as to uniform closing hours is not unlawful. The validity of the other regulations of the board is not at this time subject to review.

The judgment below is reversed.

NESBETT, C. J., concurs.

HODGE, Associate Justice (dissenting).

I must dissent. Although the conclusion reached by the majority may be desirable from the standpoint of the "practical necessities of government," it transcends the Constitution of the State of Alaska and is contrary to the great weight of authority.

The rule has been firmly established in law that there is an unconstitutional delegation of legislative power where a statute authorizes an administrative body or agency to provide regulations which attach penalties for violations of such, where the statute has not declared a policy or standard to guide the agency while acting under such delegation. Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L. Ed. 446; Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L. Ed. 1570.

This principle has been followed by the Supreme Court of the United States with regard to the legislative power vested in Congress by the Constitution of the United States, and by the Supreme Courts of many states regarding such power vested in state legislatures by state constitutions, in decisions of such courts too numerous to men-

tion, continuing through the year 1959. These decisions recognize the flexibility and practicality in establishing standards while leaving to the agency the making of subordinate rules within prescribed limits as to the determination of facts, or where the acts delegated are administrative only in character, or where the details are within the expert knowledge of the board. United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563; American Trucking Associations, Inc. v. United States, 344 U.S. 298, 73 S.Ct. 307, 97 L.Ed. 337; Lichter v. United States, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694; Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834; Panama Refining Co. v. Ryan, supra; Coady v. Leonard, 132 Ohio St. 329, 7 N.E. 2d 649; State v. Local No. 8–6, Oil, Chemical & Atomic Workers, Mo., 317 S.W.2d 309; Sepe v. Daneker, 76 R.I. 160, 68 A.2d 101; Board of Regents of University of Nebraska v. County of Lancaster, 154 Neb. 398, 48 N.W.2d 221. As stated in the opinion of the court in the Panama Refining Co. case, 293 U.S. at page 421, 55 S.Ct. at page 248:

"* * * The Constitution has never been regarded as denying to the Congress the necessary resources of flexibility and practicality, which will enable it to perform its function in laying down policies and establishing standards, while leaving to selected instrumentalities the making of subordinate rules within prescribed limits and the determination of facts to which the policy as declared by the Legislature is to apply * * *."

A distinction is made, however, between the delegation of power to make criminal offenses of acts not before made criminal, or devising new rules of law, which cannot be delegated, and those statutes conferring only supervisory control. Fahey v. Mallonee, 332 U.S. 245, 67 S.Ct. 1552, 91 L. Ed. 2030; Kentucky Alcoholic Beverage Control Board v. Klein, 301 Ky. 757, 192

---

33. Ibid.

34. See United States v. Grimaud, 1910, 220 U.S. 506, 522, 31 S.Ct. 480, 55 L.Ed. 563, 570.

S.W.2d 735; Casey v. People, Colo.1959, 336 P.2d 308; People v. Yonker, 351 Ill. 139, 184 N.E. 228; General Motors Corp. v. Blevins, D.C.Colo., 144 F.Supp. 381, 396; or, between "substantive legislation" beyond the limitations prescribed by the act, and those conferring administrative powers. Adolph Coors Co. v. Corbett, Cal.App., 123 P.2d 74; Senior Citizens League v. Dept. of Social Securities, 38 Wash.2d 142, 228 P.2d 478. In this connection it matters not that the statute fixes the penalty; it is the regulation which defines the offense.

In matters of public health, morals and safety, the rule has been somewhat relaxed as to the discretion granted where it is impracticable to fix specific standards without destroying flexibility necessary to carry out the purpose of the act. Pressman v. Barnes, 209 Md. 544, 121 A.2d 816; Blackman v. Board of Liquor Control, 95 Ohio App. 177, 113 N.E.2d 893. However, in the Pressman case the regulation considered was administrative in character, and in the Blackman case, relating to fixing minimum price for the sale of wine by the board, the statute specifically authorized the board to fix such prices.

It has also been held that in matters of liquor control, the sale of intoxicating liquors under licenses being considered a privilege, rigid standards otherwise required should not be prescribed, but there must be found "a reasonably clear formula by which the grant of power may be governed," rather than an unlimited discretion vested in the board. Darling Apartment Co. v. Springer, 25 Del. 420, 22 A.2d 397, 137 A.L.R. 803; Pompei Winery, Inc. v. Board of Liquor Control, 167 Ohio St. 61, 146 N.E.2d 430; Duff v. Trenton Beverage Co., 4 N.J. 595, 73 A.2d 578; Allied Properties v. Board of Equalization, Cal. App., 1959, 338 P.2d 1013.[1] Somewhat to the contrary is Ackerman v. Kogut, 117

Vt. 40, 84 A.2d 131, which holds that "definite" rules of action are not required.

The statute here considered does not come within any of these exceptions, for, as noted by the majority, " * * * it is true that the act contains no standards expressed as such." Nor can we find any comfort in the fact that the act authorizes the board to issue, revoke or suspend liquor licenses "in the best interests of the public" [Section 35–4–3(B), A.C.L.A.Supp., as amended], for there is no question as to the discretion which may be vested in such a board with regard to licensing provisions as distinguished from making rules of law. United States v. Storer Broadcasting Co., 351 U.S. 192, 76 S.Ct. 763, 100 L.Ed. 1081; Randles v. Washington State Liquor Control Board, 33 Wash.2d 688, 206 P.2d 1209, 9 A.L.R.2d 531; Yarbrough v. Montoya, 54 N.M. 91, 214 P.2d 769; State ex rel. Billado v. Wheelock, 114 Vt. 350, 45 A.2d 430.

The power of the legislature to regulate and control the traffic in intoxicating liquors is not questioned, but the delegation to the board of "full power, authority and control over the manufacture, barter, sale and possession of intoxicating liquors"[2] is an invalid delegation of legislative power, without limitation or standards. State v. Marana Plantations, Inc., 75 Ariz. 111, 252 P.2d 87. As is otherwise stated, while the delegation of governmental authority to an administrative body is proper in some instances, the delegation of absolute legislative discretion is not, as there must be some "ascertainable standard." State Board of Dry Cleaners v. Thrift-D-Lux Cleaners, 40 Cal.2d 436, 254 P.2d 29. Or, when the legislature has declared a general policy and "fixed limits" within which the law shall operate, it may delegate to an administrative agency the power to carry out such policy or purpose. State ex rel. Wisconsin Inspection Bureau v. Whitman,

---

1. (See also, Dickerson v. Commonwealth, 181 Va. 313, 24 S.E.2d 550, which upholds regulation of Alcoholic Beverage Control Board relating to transportation of liquor as within "specific definite standards" prescribed by the act.)

2. [Section 35–4–3(A) A.C.L.A.Supp., as amended]

196 Wis. 472, 220 N.W. 929. As otherwise stated by the Circuit Court of Appeals for the Ninth Circuit, the test is whether the standards provided by the act are "adequate for the judicial review." Alaska Steamship Co. v. Mullaney, 9 Cir., 180 F. 2d 805, 822.

Extensive research reveals but two state decisions upholding the power of a liquor control board to adopt closing hours of licensees under a general delegation of power to "regulate and control" the traffic in liquor; State ex rel. Thornbury v. Gregory, 191 Wash. 70, 70 P.2d 788, and Griffin v. Gass, 133 Neb. 56, 274 N.W. 193. These decisions are not followed upon this point in any cited case. Wholly contrary is the decision of People v. Ryan, 267 N.Y. 133, 195 N.E. 822, 824, which holds that an attempt to delegate to a state beverage control board the unrestrained volition to adopt a regulation as to closing hours of retail liquor stores, was "so essentially a legislative function as the definition of a substantive criminal offense" as to be "obviously of no effect." I do not believe that this court should adopt the extreme minority view taken in the Thornbury and Griffin cases.

It is also the position of the majority that the regulation should be approved by reason of the procedural safeguards provided by the Administrative Procedure Act (Ch. 143, S.L.A.1959). It is held that procedural safeguards cannot validate an unconstitutional delegation of legislative power, even though they do furnish protection against an arbitrary use of properly delegated authority. United States v. Rock Royal Co-operative, 307 U.S. 533, 576, 59 S.Ct. 993, 83 L.Ed. 1446. Moreover, the Administrative Procedure Act itself specifies that there shall be standards. Sec. 4, Art. I, Ch. I provides that:

"Each regulation adopted, to be effective, must be within the scope of authority conferred and in accordance with standards prescribed by other provisions of law."

In my opinion this means just what it says, that there must be such standards prescribed. In fact the legislature has been very careful to do this in other statutes authorizing boards to adopt rules and regulations which may be punished as criminal offenses. For example Fish and Game (Section 6 Art. I Ch. 94, S.L.A. 1959); and Health (Sections 40–1–6, 40–2–7, A.C.L.A.Cum.Supp.) There appears no practical reason why the legislature presently convened may not adopt similar required standards with respect to closing hours, limiting such in application.

Finally, this court should not depart at this juncture from established precedent, especially in matters relating to the Constitution of the State, for the separation of legislative and executive powers guaranteed to the people by our Constitution should not be lightly considered.

The declaratory judgment entered by the District Court should be affirmed with respect to the regulation relating to closing hours. As to the other regulations, I concur with the majority opinion that they are not here involved.