Daniel R. DENARDO, Appellant,

v.

STATE of Alaska, Appellee.

No. S–1679.

Supreme Court of Alaska.

Sept. 11, 1987.

Daniel R. DeNardo, Anchorage, pro se.

Susan D. Cox, Asst. Atty. Gen., Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

Daniel R. DeNardo claims that the Alaska Division of Elections (Division) improperly refused to place his name on the ballot for the 1986 gubernatorial election. The division based its action on DeNardo's failure to comply with then 6 AAC 25.160 (Eff. 12/19/85), which required independent gubernatorial candidates to submit nominating petitions signed by qualified voters equal in number to at least one percent of those voting in the previous general election. DeNardo asserts that the regulation was invalid. The superior court sustained the actions of the division. We affirm.

## I. VALIDITY OF 6 AAC 25.160.

Alaska Administrative Code Title 6, Section 25.160, was adopted pursuant to authority delegated to the director of elections by AS 15.15.010. That statute provides that the director "may issue regulations under the Administrative Procedure Act ... necessary for the administration of state elections." DeNardo does not claim that the director failed in any way to comply with the provisions of Alaska's Administrative Procedure Act (APA) in promulgating 6 AAC 25.160. Nor does DeNardo challenge the substance of the regulation or the *legislature's* power to enact such a rule.[1]

Instead, DeNardo claims that the division had no power "to make election laws." DeNardo argues that 6 AAC 25.160 was a void attempt by the division to amend former AS 15.25.160, which this court held unconstitutional in *Vogler v. Miller,* 651 P.2d 1, 5–6 (Alaska 1982) (*Vogler I*). AS 15.25.160 provided that a gubernatorial candidate who did not represent a political party[2] had to be nominated by petition signed by qualified voters equal in number to at least three percent of the number of votes cast in the preceding general election. Ch. 83, § 5.53, SLA 1960; ch. 100, § 138, SLA 1980; *see also Vogler I,* 651 P.2d at 2.

In *Vogler I,* we recognized as legitimate the state's justifications for the statute, including the desire to eliminate voter confusion that would result from having a multitude of candidates on the ballot. 651 P.2d at 4. We nevertheless found that none of these explanations justified the increase from the equivalent of a one percent[3] to a three percent signature requirement. Since the state failed to show that a one percent requirement would be any less effective in achieving the purported goals of the statute, we found that the state had not shown the compelling interest required

to save the three percent provision. *Id.* at 5–6.

The statute was not amended to comport with the one percent rule implicitly approved in *Vogler I* until June 6, 1986, five days after the filing deadline for nonparty candidates' nomination petitions for the 1986 gubernatorial election. Chapter 85, § 46, SLA 1986; AS 15.25.160. When it became clear that the legislature would not act in time, the division of elections promulgated 6 AAC 25.160 to govern the 1986 election.

DeNardo relies on *State v. Marshall,* 633 P.2d 227, 233–34 n. 19 (Alaska 1981,) in support of his argument that the division's adoption of 6 AAC 25.160 was in effect an attempt to amend an unconstitutional statute. This reliance is misplaced. It is clear, as DeNardo argues, that agency rules cannot amend a statute. *See id.* But, contrary to DeNardo's apparent position, the fact that the legislature has at some point enacted legislation dealing with a particular topic does not forever foreclose the legislature from delegating authority to an agency to make rules affecting the same topic.

This court has soundly rejected such an argument. In *Kelly v. Zamarello,* 486 P.2d 906 (Alaska 1971), we stated:

> When administrative rule-making is based upon clear authority from the legislature to formulate policy in the adoption of regulations, the rule-making activity takes on a quasi-legislative aspect. We have held that, under proper standards, such delegations of legislative power to administrative agencies are constitutional. *Boehl v. Sabre Jet Room, Inc.,* 349 P.2d 585 (Alaska 1960).

*Id.* 489 P.2d at 909.

In *Boehl,* the following language appears:

---

1. Indeed, the legislature has since enacted a statutory one percent signature requirement. AS 15.25.160.

2. "Political party" is defined as an organized group of voters that had polled a certain percentage of votes in the preceding gubernatorial election. Prior to 1983, the statutory percentage was 10%. This was found to be an unconstitu-

tional restriction on access to the ballot. *Vogler v. Miller,* 660 P.2d 1192, 1195–96 (Alaska 1983) (*Vogler II*). In 1986, the percentage was lowered to 3%. Ch. 85, § 34, SLA 1986.

3. The statute had previously required 1000 signatures, slightly less than 1% of the votes cast in 1978. *Vogler I,* 651 P.2d at 5 n. 10.

[P]rovision is made [in the Alaska Constitution] for creation by the legislature of regulatory agencies that are not under the supervision of the executive. Alaska Constitution, Art. 111, §§ 22, 24, 26. Such agencies would obviously have the function of exercising authority and control in places where the legislature has decided not to exercise all the authority and control itself. This would be a delegation of legislative power and the constitution provides for it.

*Id.* 349 P.2d at 588 (footnote integrated into text).

The three percent provision of former AS 15.25.160 became null and void upon this court's decision in *Vogler I,* 651 P.2d at 5–6. The division's subsequent regulatory enactments could not "amend" a void statute. Rather, the division stepped in to address a question regarding which the legislature implicitly decided not to exercise all of its authority and control.

Thus DeNardo's argument that the division generally has no power to make election laws is without merit. The legislature is constitutionally empowered to delegate legislative authority to regulatory agencies under certain circumstances.

■ The question remains whether the specific regulation actually adopted by the division is valid. Resolution of this question involves a two-part inquiry: first, is the regulation consistent with and reasonably necessary to carry out the purposes of the statutory provisions conferring rulemaking authority on the agency,[4] and second, is the regulation reasonable and not arbitrary. *Kelly,* 486 P.2d at 911.

The relevant delegating statute provides: The director [of elections] shall provide general administrative supervision over the conduct of state elections, and may issue regulations under the Administrative Procedure Act ... necessary for the administration of state elections.

AS 15.15.010. The delegation of authority is further limited by the APA:

If, by express or implied terms of a statute, a state agency has authority to adopt regulations to implement, interpret, make specific or otherwise carry out the provisions of the statute, no regulation adopted is valid or effective unless consistent with the statute and reasonably necessary to carry out the purpose of the statute.

AS 44.62.030. Thus, 6 AAC 25.160 was valid if it was consistent with relevant statutes and reasonably necessary for the administration of state elections. After *Vogler I,* there was no effective statute governing the number of signatures required for a nominating petition. Moreover, the legislature had previously expressed its desire to place some limitation on access to the gubernatorial ballot by enacting former AS 15.25.160. We recognized this as a legitimate concern in noting "[t]hat 'laundry list' ballots discourage voter participation and confuse and frustrate those who do participate." *Vogler I,* 651 P.2d at 5, *quoting Lubin v. Panish,* 415 U.S. 709, 715, 94 S.Ct. 1315, 1319, 39 L.Ed.2d 702, 708 (1974). In addition, the legislature has confirmed its continued approval of the policy of limiting access to the ballot by enacting the new AS 15.25.160, which is virtually identical to 6 AAC 25.160. Thus, 6 AAC 25.160 did not conflict with any statute in effect and was consistent with the expressed legislative intent.

Moreover, by implicitly approving a one percent voter signature requirement in *Vogler I,* we have already found the rule to be neither unreasonable nor arbitrary. *Vogler I,* 651 P.2d at 5–6.

6 AAC 25.160 was validly enacted. DeNardo failed to comply therewith and the division properly rejected his nominating petition.

## II. ISSUES RELATING TO ACCESS OF WRITE–IN CANDIDATES TO VOTERS.

The superior court concluded that issues relating to the propriety of the division's

---

**4.** This aspect of review insures that the agency has not exceeded the power delegated by the legislature. *Kelly,* 486 P.2d at 911.

alleged refusal to include write-in candidates in voter information pamphlets were not ripe for decision. These issues were dismissed without prejudice. At the time of the hearing on DeNardo's "writ of mandamus," the pamphlet deadlines were still months away.

Apparently, the only pertinent information before the superior court was DeNardo's affidavit which stated: "Unofficially through the Division of Elections, Mr. DeNardo was informed that a write-in candidate would not have access to the election pamphlet." In its oral decision, the superior court deferred the issue of write-in candidate access to the voter information pamphlet, and invited each side to brief the question.

■ DeNardo chose to appeal instead, arguing that the dismissal without prejudice was error because the access issue was "inextricably intertwined" with the nomination petition question. It cannot be determined from the record, however, whether DeNardo in fact attempted to wage a write-in campaign. It is thus impossible to discern the factual posture of this claim. The superior court wisely recognized this claim as unripe for judicial determination and declined to address it. We do likewise.

### III. CONCLUSION.

The division of elections acted within the scope of the authority delegated to it by the legislature when it enacted 6 AAC 25.160. DeNardo failed to comply with its provisions and the division properly rejected his petition. The superior court correctly found that DeNardo's claims relating to his write-in candidacy were not ripe for review.[5]

The superior court's decision is AFFIRMED.

---

5. The division also argues that DeNardo's claim is moot. In view of our disposition regarding the validity of the regulation, we do not address the mootness issue.