Michael E. WHITEHEAD, Alcoholic Beverage Control Administrator and Citizen of Newport, Kentucky, Movant,

v.

ESTATE OF Ray BRAVARD, d/b/a Ray's Grocery, and Alcoholic Beverage Control Board of the Commonwealth of Kentucky, Respondents.

Supreme Court of Kentucky.

Sept. 4, 1986.

Rehearing Denied Dec. 18, 1986.

Daniel R. Braun, Newport, for movant.

Mark H. Woloshin, Newport, Catherine Staib, Frankfort, for respondent.

Frank A. Wichmann, Covington, for amicus curiae—City of Erlanger.

R. Barry Wehrman, Wehrman & Wehrman, Chartered, Covington, for amicus curiae—Club Keeneland, Inc.

STEPHENS, Chief Justice.

The precise issue we address on this appeal is whether a municipality may, by ordinance, limit the number of retail beer licenses in that city, when such limitation is in conflict with an order of the Alcoholic Beverage Control Board of the Commonwealth, although the Board had not previously adopted a specific quota for such licenses within the city.

In February of 1982, the City of Newport passed an ordinance which limited the number of retail alcoholic beverage licenses to

be issued by the city. Among the limitations imposed by the ordinance was a total of twenty-five retail beer licenses. As stated, the Alcoholic Beverage Control Board of the Commonwealth, at that time, had not adopted a specific quota for such licenses. Shortly thereafter, Ray Bravard, d/b/a Ray's Grocery, applied to the city for a retail beer license. Movant, Michael Whitehead, the local alcoholic beverage administrator, denied the application solely because the license, if granted, would exceed the limit set out in the ordinance.

Bravard appealed Whitehead's decision to the Alcoholic Beverage Control Board. KRS 241.200. Following a hearing, the Board, refusing to recognize the quota established by the ordinance, reversed and ordered the issuance of a beer license to Bravard. Whitehead appealed the Board's ruling to the Franklin Circuit Court, which decided that since the Board has the statutory power, pursuant to KRS 241.060(2), to limit the number of such licenses to be issued in the state or any political subdivision thereof, the Board has the "sole authority" to determine quotas for such licenses. Further, the court declared that even though the Board had not set a quota for beer licenses in Newport, that fact did not strip it of the power to do so. In effect, the trial court decided that the latent power of the Board was superior to the ordinance enacted by the city. A majority of the Court of Appeals concurred in the decision of the trial court.

Movant argues that since the Alcoholic Beverage Control Board had not adopted a specific quota for Newport, under the Kentucky Home Rule Statute, KRS 82.082, the city was authorized to establish the quota, and therefore the city's ordinance was superior to the order of the Board. Movant also argues that the city ordinance did not curtail the power of the Board, but simply was a proper exercise of municipal authority in the absence of state action. Not surprisingly, movant relies heavily on the case of *Deckert v. Levy*, 308 Ky. 67, 213 S.W.2d 431 (1948). Respondents deny the applicability of the Home Rule Statute and simply argue that under the existing statutory scheme regulating the manufacture, sale and marketing of all alcoholic beverages, the power of the state is superior. We agree with the respondents, and affirm the decision of the Court of Appeals.

The parties stipulate that the state has the ultimate power to set local license quotas. The problem arises in the case *sub judice*, because the state *did not* set a specific quota for Newport, whereas the city *did* set such a quota and enforced the quota until the specific order of the Alcoholic Beverage Control Board, entered later in time than the city ordinance, negated the quota set in the ordinance.

The authority of the Commonwealth to regulate the alcoholic beverage industry has been exercised by the General Assembly by the enactment of Chapters 241–244 of the Kentucky Revised Statutes. The regulatory agency established to oversee the industry is the Alcoholic Beverage Control Board. KRS 241.015. Its basic duties and responsibilities are described as follows:

"The department shall administrate statutes relating to, and regulate traffic in, alcoholic beverages...." KRS 241.020(1)

The power, duties, etc. of the Board are set out in KRS 241.060. Among them is the sole authority to set the number of licenses:

"(2) To limit *in its sound discretion* the number of licenses of each kind or class *to be issued in this state or any political subdivision*, and restrict the locations of licensed premises. *To this end the board may make reasonable division and subdivision of the state or any political subdivision into districts.* Regulations relating to the granting, refusal and revocation of licenses may be different within the several divisions of subdivisions...." (emphasis added).

The impelling message of the statute is that there are no restrictions (other than the requirement of reasonableness) on the authority of the state to control the number and kinds of licenses in the state and

any political subdivision thereof. Moreover, the Board may make its own division and subdivision of the state for purposes of issuing licenses.

The Board, through the vehicle of administrative regulations, has chosen to limit the number of licenses in four categories: (1) retail package licenses, (2) retail drink liquor licenses, (3) wholesale liquor licenses, and (4) malt beverage distributors' licenses. 804 KAR 9:010, 9:020 and 9:030. The Board has *not* set any limits on the number of retail beer licenses.[1]

[1] Movant argues that the power to limit retail beer licenses is conferred on the city by KRS 243.070. This is clearly not so. That statute is as follows:

> *The city legislative body* of any city in which traffic in alcoholic beverages is not prohibited under KRS Chapter 242 *may impose license fees for the privilege of manufacturing and trafficking in alcoholic beverages.* Only such licenses may be issued as correspond, in their provisions and the business authorized, to the licenses provided for in subsections (1), (2), (3), (6), (7), (8), (16), (17), (18) and (19) of KRS 243.030 and subsections (1), (2), (3) and (6) of KRS 243.040. The fees imposed shall not exceed twice the amount of the fees imposed in KRS 243.-030 and 243.040 for such licenses, except that the fee for a Sunday distilled spirits and wine retail drink license shall not exceed three hundred dollars ($300), the fee for a malt beverage retailer's license may be fixed at not exceeding two hundred dollars ($200), the fee for a brewer's license shall not exceed five hundred dollars ($500), and the fee for a distiller's license shall not exceed five hundred dollars ($500)." (emphasis added).

This statute merely permits cities to impose license fees for the privilege of "manufacturing and trafficking in alcoholic beverages." No language appears that can—even inferentially—authorize cities to impose quotas on the number of licenses issued.

To stretch the language of this statute to give such power to cities is neither logical nor realistic. The statute even imposes limitations on the city's power as to the types of licenses that can be assessed and further limits the amount of the fee in certain instances. Clearly, movant's argument here has no basis.

The Home Rule Statute also gives little support to movant's position. He argues that since the state, through its agency, the Alcoholic Beverage Control Board, has not spoken relative to the city's power to impose quotas, the Home Rule Act fills in the gap and gives that power to the city. That statute is as follows:

> "POWER FOR PUBLIC PURPOSE ONLY AND NOT IN CONFLICT WITH CONSTITUTION OR STATUTES.—(1) A city may exercise any power and perform any function within its boundaries, including the power of eminent domain in accordance with the provisions of the Eminent Domain Act of Kentucky, *that is in furtherance of a public purpose of the city and not in conflict with a constitutional provision of statute.*
>
> (2) *A power or function is in conflict with a statute if* it is expressly prohibited by a statute or *there is a comprehensive scheme of legislation on the same general subject embodied in the Kentucky Revised Statutes* including, but not limited to, the provisions of KRS Chapters 95 and 96. KRS 82.082. (emphasis added).

■ Under section one, it is true that a city in the Commonwealth may exercise any power or perform any function that is for a public purpose and is not in conflict with a state statute. Section two, however, states unequivocally *that there is such a conflict with a state statute* if there is a "comprehensive scheme of legislation on the same general subject embodied in the Kentucky Revenue Statutes." As we have said, the General Assembly has enacted a broad and detailed scheme regulating the

---

1. It is significant that *nowhere* in this statute is *any* power or authority given to cities or coun-

ties relative to the number of licenses.

manufacturing, sale and distribution of alcoholic beverages. It is clear that such a statutory scheme fits within the exception of the Home Rule statute set out in KRS 82.082(2), thus making that statute inapplicable and unavailable to authorize the questioned city ordinance.

Having established that the Home Rule statute and KRS 243.070 do not support movant's contention, we now address the precedents of this Court.

In *Deckert v. Levy*, supra, the city of Newport on November 15, 1946, had enacted an ordinance limiting the number of beer licenses in the city. However, at that time, the city had not yet created the statutorily authorized office of local alcoholic beverage control administrator, therefore, when Levy sought a beer license, he applied directly to the city commission. That body denied the license, because the locally set quota for such licenses had already been reached. Prior to applying to the city commissioner, Levy had applied to and received such a license from the Alcoholic Beverage Control Board, thus the conflict. Levy sued the city of Newport and obtained a writ of mandamus directing the commission to issue him a license. The Court of Appeals reversed.

The precise question decided in *Deckert* dealt with the authority of a city to limit the number of beer licenses in the absence of a regulation by the Alcoholic Beverage Control Board, *but only when the office of city alcoholic beverage control administrator has not been created.* KRS 241.160. In the case at bar, the Board also had not set a specific quota for beer licenses, however, unlike the situation in *Deckert,* here, the city had established the office of city alcoholic beverage control administrator.

It is clear to us that, under *Deckert,* when the city does create the office of the local administrator, the effect is to bring the city wholly under the aegis of state regulation. In such a situation, the city has thus used a state statute to create the office of the local administrator, and thereby has consented to the Board's authority,

patent or latent. In *Deckert,* we reiterated the rule that the power of the state to control and regulate the traffic in alcoholic beverages is supreme. Where there is a conflict in that authority between state and local governments or the exercise of that power, the state has supremacy. *Deckert,* supra. *Kentucky Alcoholic Beverage Control Board v. Klein,* 301 Ky. 757, 192 S.W.2d 735 (1946), *O'Brien v. Department of Alcoholic Beverage Control,* 306 Ky. 238, 206 S.W.2d 941 (1947).

In *Deckert,* we found no conflict between the state action and local action, because we found that *no* state action had been taken. Specifically, we said:

> "It is going too far to say that such an administrative board ... may act in contravention of local legislation, without having laid down any standard, established any rule or adopted any stable regulation." *Id.* 213 S.W.2d at 433.

The court thus described the lack of a *quota* being set by the Alcoholic Beverage Control Board. But then the Court, for the third time in the opinion at page 434, tied this lack of quotas to the fact that the city had not created a local administrator's office, as the basis for its decision.

> "But, as we have said, the Board has not established or promulgated any such regulation for the City of Newport. *And the City has not chosen to exercise its option to create the office of City Alcoholic Beverage Administrator.* (emphasis added). *Id.* at 434.

Because of these two factors, we said:

> " ... It cannot be said that the state moved in and exercised its superior authority...." *Id.*

The only inference that can be drawn from this language is that the local quota is only valid if the state has not "moved in and exercised its superior authority." If the state has either actually set a local license quota by regulation *or* if the city, pursuant to KRS 241.170 has created the office of the local administrator, the state has "moved in." In the present case, there was a local administrator, and *ergo,* the state's authority was present at the time

the ordinance was executed, and was supreme thereto. *Deckert* is therefore clearly distinguishable and is not dispositive of this appeal.

■ .We believe that the power of the state to regulate the alcoholic beverage industry is supreme. Any delegation of that authority, because of the nature of the industry, must be specific and unequivocal, not merely inferential. In the present case, even though the state had not chosen by regulation to set a quota for local beer licenses, its power to do so remains. The failure to exercise that power—specifically—does not impliedly give that power to local governments.

We have so held in the case of *Bickett v. Palmer-Ball*, Ky., 470 S.W.2d 341 (1971). In *Bickett*, the Daviess County Fiscal Court established a quota for the number of wholesale beer or malt beverage licenses within the county. Bickett, a qualified applicant, sought a license and was denied one. There was no evidence of an existing state quota. We said:

> "It is our opinion that the resolution adopted by the fiscal court ... which purported to establish a quota ... was not authorized by statute and was ineffective. The Board did not approve such a quota for Daviesss County and it was improper to deny Bickett a license upon the ground that the issuance of a license to him would exceed a purported quota established by the fiscal court." (emphasis added). *Id.* at 343.

We thus decided that a local fiscal court cannot set a quota without having state approval for such action, either through a statute or an action of the Board.

Our cases have, historically and uniformly, declared that the state's power to regulate the alcoholic beverage industry is supreme. Any local regulation of that industry must be specifically authorized by either the General Assembly or the Alcoholic Beverage Control Board. We have specifically decided the issue with respect to fiscal courts. Although we have distinguished *Deckert v. Levy*, on the facts, and thus feel comfortable in affirming the deci-

sion of the Alcoholic Beverage Control Board, the trial court and the Court of Appeals in this case, we believe that *Deckert* is in error in its language which suggests that local regulation of alcoholic beverages is permissible if the state has not "moved in." The power of the state, with respect to the regulation of a traffic in alcoholic beverages, is supreme. The fact that the state has not acted, does not eliminate that power. It still exists, in latent form. To whatever extent, if any, that *Deckert v. Levy* holds to the contrary, it is overruled.

The decision of the Court of Appeals is affirmed.

GANT, STEPHENSON, and WHITE, JJ., concur.

WINTERSHEIMER, J., dissents in a separate opinion and is joined by LEIBSON and VANCE, JJ.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent because the majority opinion totally misapplies and misinterprets the law of Kentucky. The true question is misunderstood by the majority.

The real issues are 1) whether the City of Newport can enact an ordinance setting a limit on the number of malt beverage licenses for its territory in the absence of any state limit, and 2) whether the City of Newport is compelled to issue a license authorizing Bravard to operate in the City.

KRS 82.082 clearly provides that a city may exercise any power and perform any function within its boundaries that is in the furtherance of a public purpose of the city and not in conflict with a constitutional provision or statute. The only logical result is that the quota on liquor licenses issued by Newport are valid unless they are in conflict with a constitutional provision. There is no conflict in this case because there is no state limit.

Prior to the enactment of KRS 82.082 in 1980, the statute authorizing city licenses, KRS 243.070 had been interpreted as authorizing quotas on the number of city

licenses, *Deckert, supra,* as well as other restrictions such as the nature of the licensed premises, *City of Bowling Green v. Gasoline Marketers Inc.,* Ky. 539 S.W.2d 281 (1976), and the hours of operation, *City of Newport v. Tye,* Ky. 335 S.W.2d 340 (1960). The position of Newport is not that the power to regulate licenses is conferred by KRS 243.070. The argument as I interpret it is that this statute does not prevent the city from imposing a regulation or establish a conflict of laws. It is the majority that stretches the language or inaction of the State Board to permit unlimited beverage licensing in cities. In this situation, we have a void and a total inaction by the state regulatory authorities. Until action is taken by those who are charged with such responsibility, there is nothing in the law to prevent local communities from protecting their citizens by such regulations. There is no contention that the Commonwealth may override a local quota when it desires and it may grant "state" liquor licenses. It does not necessarily follow that a City has to follow suit. Practically, the State Board has control over this situation when and if it acts, however, in the absence of the Board's action as in this case, the city may act in a manner it believes necessary and in its overall best interest.

KRS 241.060(2) authorizes the State Alcoholic Beverage Control Board to fix limits on the number of licenses and the type of locations where licenses will be permitted throughout various districts in the state. There is nothing in the language of this statute which expressly or impliedly prohibits a city from establishing limits on the number of alcoholic beverage licenses within its jurisdiction.

KRS 243.070 specifically authorizes cities to impose license fees and issue licenses which correspond to licenses authorized by the state. The only limitation is on the maximum amount of fee.

KRS 82.082(1) provides that a city may exercise any power and perform any function within its boundaries that is in furtherance of a public purpose of the city and not in conflict with a constitutional provision or statute. Subsection (2) further provides that a power or function is in conflict with a statute if it is expressly prohibited by statute or there is a comprehensive program of legislation on the same general subject embodied in the statutes.

The Alcoholic Beverage Control Board has not established any limits for the City of Newport. Consequently it cannot be logically argued that the Newport ordinance is in direct conflict with the state statute or any constitutional provision.

Cities of the second class, such as Newport, have the authority to adopt ordinances and regulations which are not in conflict with or inconsistent with state statutes. The cities can adopt laws which are more restrictive than the state statute when there is no particular plan provided for by state regulation.

*Deckert v. Levy,* 308 Ky. 67, 213 S.W.2d 431 (1948), is directly in point. *Deckert, supra,* held that the power to issue alcoholic beverage licenses by cities pursuant to KRS 243.070 included the authority to limit the number of retail beer licenses within the municipality. In *Deckert,* the state had not established any limitation on the number of licenses to be issued in that area. The same is true in this case. The record indicates that Newport has in excess of 116 retail malt beverage licenses. Ordinance No. 0–82–16 attempts to curtail only the expansion of this activity by limiting the number of licenses to 25. The ordinance clearly provides that it does not prohibit the renewal or transfer of any existing license, nor does it prohibit the issuance of licenses in excess of the number allowed where specific provisions are made for such outlets as hotel and motels.

Reliance on the case of *Bickett v. Palmer-Ball,* Ky. 470 S.W.2d 341 (1971) is misplaced. In that case we held that a county fiscal court had only the power granted to it by statute and because they had no statutory authority in this area, there action was improper. In this case, the City of Newport does have such authority pursuant to KRS 82.082.

There is no conflict between Newport and any superior authority vested in the State Board. The Board has chosen to remain totally silent in its official activities as to the regulation of this license. Consequently in the absence of any conflict, the city may establish such a quota and its ordinance should be given validity.

The remedy available to Bravard or others so situated is very simple. It would be to acquire an existing license and have it transferred. The litigant is not without remedy but the majority opinion would place Newport in the position of having absolutely no control over the number of alcoholic beverage outlets in its city and subject to the omniscient wisdom of state regulators. The result could allow outlets in unlimited numbers throughout Newport as well as every other incorporated city in the state.

The majority opinion would place Newport in the position of having absolutely no control over the number of alcoholic beverage outlets in its city and subject it to the caprice and inaction of the state which under present conditions would be able to allow an unlimited number of liquor licenses throughout the city. If the State Board ever adopts quotas or limits for Newport, there would at least be some known limit and regulation.

If the numbers were excessively large or unlimited, it could conceivably be challenged. However, if the majority opinion prevails, there is no way for any one to challenge the issuance of additional permits.

The Board has never exercised its authority pursuant to KRS 241.060(2) to limit or establish the number of various liquor licenses in the City of Newport.

There are no state regulations, statutes, constitutional provisions or recorded cases that prohibit the City of Newport from limiting the number of various liquor licenses issued by it within its territorial jurisdiction. KRS 82.082, the Home Rule Statute, and KRS 243.070 provide clear authority for the actions taken by the City of Newport.

Home rule is a method of distributing power between state and local government. See Sandlow *The Limits of Municipal Power Under Home Rule: a Rule for the Courts,* 48 Minn. Law Review 643. It is designed to allow cities local autonomy especially in dealing with matters of local concern such as alcohol. The Home Rule Statute grants power over cities to the cities themselves. Legitimate regulation of alcoholic beverages is an area of great concern and of such predominantly local interest that cities deserve a considerable measure of self-determination. Cities are better able to handle their own problems and to fashion their own solutions to individual problems consistent with law. Certainly an overview might be provided by statute so as to determine fair dealing in such situations. There should be no room for a parallel system of inchoate authority that interferes with active local decisions.

The state has not preempted and reserved to itself, even before home rule, the power to regulate the sale of liquor. The state has simply failed to act. The Board has never established any quota or limitation on the number of the various types of liquor licenses issued by the city.

In this case the State Board has never established any quotas or limitations on the number of liquor licenses issued by the City of Newport. The quotas established by the city ordinance do not conflict with any quota or regulation by the Board or its superior power in this area. Consequently, the issue is not the curtailment of the supremacy of the State Board but the authority of the City of Newport to establish such quotas of its own in the absence of any conflicting regulation by the state.

Faced with total inaction by the State Board the City of Newport has undertaken to regulate itself. It should be accorded legal recognition for such a courageous act of local government.

The decision of the Court of Appeals should be reversed.

LEIBSON and VANCE, JJ., join in this dissent.