**David Isador PORT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 3–85–191–CR.**

Court of Appeals of Texas,
Austin.

Aug. 12, 1987.
Rehearing Denied Sept. 16, 1987.

Jack B. Zimmerman, Randall B. Clark, Law Offices of Jack B. Zimmerman, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Timothy G. Taft, Asst. Dist. Atty., Houston, for the State.

Before EARL W. SMITH*, GAMMAGE and ABOUSSIE, JJ.

ABOUSSIE, Justice.

David Isador Port was convicted of the offense of murder. Tex.Pen.Code Ann. § 19.02 (1974). The jury assessed Port's punishment at 75 years in the Texas Department of Corrections and ordered him to pay a $10,000 fine. Because the trial court admitted into evidence oral statements made by Port following his arrest which were inadmissible under the rules governing criminal procedure and contrary to rulings by the Texas Court of Criminal Appeals, which we are bound to follow, we must reverse the judgment and remand the cause for a new trial.

In appellant's first two points of error, he asserts that the trial court erred in overruling his pre-trial motion to suppress certain oral statements made by him following his arrest and in permitting these to be introduced before the jury. Appellant specifically argues in his second point that his motion should have been granted because the statements were not taken in conformity with Tex.Code Cr.P.Ann. art. 38.22 § 3 (Supp.1987) and did not fall within any exception to the rule of exclusion. We must sustain appellant's second point of error and thus need not address his remaining complaints other than his third point of error, which asserts that the evidence is insufficient to sustain the jury verdict finding him guilty.

Because of the ruling by the United States Supreme Court in *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), the Texas Court of Criminal Appeals has held that a challenge to the sufficiency of the evidence should be considered before disposing of a case, even when reversal may be based upon other grounds. *Selman v. State*, 663 S.W.2d 838 (Tex.Cr.App.1984). Following the order in which the Court of Criminal Appeals considered similar complaints in *Dunn v. State*, 721 S.W.2d 325 (Tex.Cr.App.1986), we first address appellant's challenge to the sufficiency of the evidence.

Debra Schatz, a postal carrier, was delivering mail on her postal route on June 7, 1984, when she disappeared. A supervisor

---

* Before Earl W. Smith, Justice (retired), Third Court of Appeals, sitting by assignment. *See*

Tex.Gov't Code § 73.012 (Supp.1987).

drove her route twice that evening, but he was unable to locate either Schatz or her vehicle. On the morning of June 8, one of Port's neighbors reported that a postal vehicle had been parked on her street overnight. Police and postal inspectors arrived to investigate. Port's father summoned police to his home to report that Port, who is a diabetic, was missing, and that there were bullet holes in the home. He showed police six guns which he had removed from appellant's room. Appellant's father delivered to Sgt. Collier a .22 Ruger pistol which he had removed from appellant's bedroom and which smelled as if it had been fired. Collier gave the pistol to Officer Sauceda, who locked it in the trunk of her police vehicle. Tests later proved that a bullet fired from this pistol caused the death of the victim.

During a search of the Port home, the officers found a bloody tennis shoe print in the garage. A tennis shoe which Port's mother identified as belonging to appellant matched the print. Bloodstains were found in the hallway between the front door and the garage. There were bullet holes in the stairwell. A fingerprint taken from the doorjamb of appellant's upstairs bedroom was later identified as that of the deceased.

In light of what police had discovered at the Ports' home on June 8, they issued a bulletin seeking appellant as a possible homicide suspect. At about 2:00 p.m., appellant was seen by police approaching his home in his automobile. Before reaching the house, however, he turned his car and fled, pursued by Officers Sauceda, Waltmon and Harris, who apprehended him in an apartment complex parking lot. Appellant was arrested at gunpoint and handcuffed. He was then placed in the back seat of Sauceda's car, where Officer Harris read Port his *Miranda* warnings. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). After the officers satisfied themselves that Port understood his rights, they immediately began questioning him. Waltmon first asked appellant whether he had killed the female

postal carrier, to which Port responded, "Yeah, I shot her." When asked what he had done with the body, appellant responded that he had thrown it in a nearby bayou. Port's verbal responses to police questioning at the time of his arrest were excluded from evidence by the trial court. From the time of Port's initial arrest until the time they left the parking lot, a period of about fifteen minutes expired.

Port then directed postal inspector Bill Mason, Waltmon and Sauceda in the car to a bayou where he claimed he had disposed of Schatz' body. In fact, the body was found instead about midnight that night in a field several miles away. Police continued to question Port in the police car during the drive to the bayou. Waltmon asked Port how he had killed Schatz, and appellant replied that he had shot her in the head with a .22. In the vehicle and after arrival at the bayou, in response to questions, Port described how the victim had gone up to his room, how he shot her as she tried to escape downstairs and how he cleaned up the house afterwards. Port also explained how he supposedly disposed of the body, sometimes volunteering apparently false information. After searching the area without success for about fifteen minutes, Port was taken downtown. All oral statements made by appellant up to this point were excluded from evidence by the trial court's ruling.

At approximately 2:45 p.m. on June 8, roughly 30 minutes after appellant's arrest, Officer Sauceda drove Port in her patrol car from the bayou to the police station in downtown Houston. The trip lasted about twenty-five minutes in heavy traffic. Sauceda had been present throughout Port's questioning to this point. On the way to the station, after about ten minutes of silence and in response to no question by Sauceda, appellant told her:

You know, I don't remember everything that happened, but I do remember walking her up the stairs with my gun. I know she was afraid. But when I got to the top, she fell. You see, she was try-

ing to get away; so, I grabbed her by the blouse. She kept struggling; so I went back up the stairs and I looked down and I started shooting at her. I know I missed her many times, but I know I hit her at least two times, maybe on the head, I don't know. I just looked at her for a long time. Then I went downstairs, and I knew she was dead.

This oral statement was admitted into evidence at Port's trial. The State takes the position that this statement was volunteered and not a response to custodial interrogation. Immediately after the statement was made, Sauceda asked appellant more questions, and appellant responded to them, but while the trial court ruled that these further oral statements Port made to Sauceda were admissible, these responses were not offered into evidence at trial.

Earlier that morning, Sauceda had placed in the trunk of her car the .22 caliber pistol which had been retrieved from appellant's home and which police believed to be the weapon employed in the crime. When Sauceda and Port arrived at the police station, Sauceda opened the trunk and placed the pistol in view on top of her clipboard and then opened the door for appellant. As he was getting out of the car, Port asked Sauceda, "Is that my gun?" Sauceda asked Port, "Do you recognize it?", to which appellant responded, "Yes, that is the one I used to kill her." The trial court also permitted these statements of appellant to be admitted into evidence. The State denies that this information resulted from custodial interrogation, but if so, the State argues that any error is harmless. At the police station, questioning of Port continued, but the trial court excluded from evidence these further oral statements. Port's statements were never electronically recorded nor did he sign a written statement.

After the television news the evening of June 8, a wrecker driver called police to report that he had seen appellant on the news broadcast and recognized him as the person whose car he had towed before noon earlier that day. He led the police to a location where he had towed the car from a field. Physical evidence determined that it was appellant's car which had been stuck in the field. The victim's body was discovered in the field nearby, along with bloody trash bags and other physical evidence. A button was missing from the deceased's pants, and a button matching others on her pants was found in the trunk of appellant's car.

An autopsy determined that the deceased died from two gunshot wounds to her head. Tests confirmed that one of the shots was fired from the .22 pistol recovered from the Port home and placed in Officer Sauceda's trunk. One of Port's neighbors later claimed that at about 2:30 or 2:45 p.m. on June 7 she heard a woman scream twice "in terror," though she did not report this fact until much later. The victim's body was placed in the morgue about 3:15 a.m. on June 9. The medical examiner testified that he estimated death at between 12 and 24 hours earlier, while the pathologist testified that he estimated the time of death was 18 to 24 hours prior thereto.

In determining the sufficiency of the evidence to support a criminal conviction, the question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Carlsen v. State*, 654 S.W.2d 444 (Tex.Cr.App.1983) (opinion on State's motion for rehearing). When determining a question of sufficiency of the evidence, all of the admitted evidence, both proper and improper, must be considered. *Jackson v. Virginia, supra; Dunn v. State*, 721 S.W.2d 325, 327 (Tex. Cr.App.1986); *Porier v. State*, 662 S.W.2d 602, 606 (Tex.Cr.App.1984).

When prosecuting an accused for murder, the State is required to establish the corpus delecti by showing that (1) the body or remains of the body is found and identified, and (2) that the victim's death was

caused by the criminal act of another. *Self v. State*, 513 S.W.2d 832 (Tex.Cr.App.1974). The State clearly proved that the victim Debra Schatz died from gunshot wounds to her head and thus established the corpus delecti by proving the identity of the body of the deceased and further establishing that she died from a criminal act of violence. Proof of the corpus delecti does not require a third element showing the accused to be the guilty agent connected with the criminal act. *Self v. State, supra.*

While proof of the corpus delecti may not be made by an extrajudicial confession *alone,* proof that the accused caused the victim's death, that is the accused's guilt, can be proven by the confession alone. *Self v. State, supra.* Once the State establishes the corpus delecti, the defendant's confession alone is enough evidence to prove he is the agent guilty of the commission of the crime. *See Dunn v. State, supra.*

Once the State meets its burden to establish the corpus delecti, if the accused in his confession then admits killing the deceased under circumstances sufficient to prove murder, as did Port, the evidence will be deemed sufficient to sustain a murder conviction. *Dunn v. State, supra* 721 S.W.2d at 333; *Brantley v. State*, 522 S.W.2d 519 (Tex.Cr.App.1975). This is so even if the confession is ruled inadmissible on appeal. *See Porier v. State, supra.*

Our review of the evidence, however, is complicated because, as in *Dunn,* the court's charge included the following instruction:

> You are instructed that under our law a confession, standing alone, is not sufficient to authorize a conviction for the alleged offense. So, if you find from the evidence beyond a reasonable doubt that the defendant made a confession to the commission of the offense, if any, still, *you cannot convict the defendant unless you find* from the evidence beyond a reasonable doubt that there is *other evidence* before you *in this case which, of*

> *itself, tends to connect the defendant with the offense committed,* if any, *separate and apart from the alleged confession,* if any, of the defendant, and if you have a reasonable doubt that there is such other corroborative evidence, then you will acquit the defendant. (emphasis added)

In *Dunn,* the Court of Criminal Appeals held that this instruction was inconsistent with its holding in *Self v. State, supra,* and should not have been given to the jury, as the accused's confession is sufficient to convict once the corpus delecti is established. Nevertheless, since the jury was so charged, the evidence must conform to the instruction or be deemed insufficient as a matter of law to support the conviction. *Dunn v. State, supra* 721 S.W.2d at 334; *See Benson v. State*, 661 S.W.2d 708 (Tex. Cr.App.1982), *cert. denied*, 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984).

■ In accordance with the holding in *Dunn,* we have examined the record, as required by the erroneous instruction, to determine whether there is independent evidence separate and apart from the confession tending to connect the accused with the crime. *See Smith v. State*, 363 S.W.2d 277 (Tex.Cr.App.1963). Viewing the evidence in the light most favorable to the jury's verdict in support of the prosecution, we hold that a rational trier of fact could have inferred or deduced from the evidence and testimony that Port was the agent guilty of the commission of the crime causing the death of Schatz. Appellant's point complaining that the evidence is insufficient to support his conviction is overruled.

■ With respect to Port's complaints concerning admission of his oral statements, the State contends appellant has failed to place anything before this Court for review, since appellant did not specify in his brief the location in the record where the oral statements were introduced. *See Hawkins v. State*, 613 S.W.2d 720 (Tex.Cr.

App.1981), *reh. denied,* 454 U.S. 1093, 102 S.Ct. 660, 70 L.Ed.2d 632 (1981). However, appellant filed a supplemental brief directing this Court's attention to those portions of the record where his oral statements were admitted into evidence, and this Court may, in its discretion, consider any error it can identify from the contents of the briefs.

Absent a showing that his oral statements were admitted into evidence, appellant might have failed to preserve any error for appeal. *Hawkins v. State, supra; Dabbs v. State,* 507 S.W.2d 567, 569 (Tex. Cr.App.1974). Even if the trial judge erred by overruling appellant's motion to suppress his oral statements, unless the statements were introduced into evidence for the jury's consideration, there would be no harm. In fact, only a few of the comments by appellant which the judge ruled admissible actually were testified to before the jury. However, in considering the evidence at the suppression hearing as well as the content of appellant's briefs, we can sufficiently locate in the record the error about which Port complains. Therefore, we will consider the merits of appellant's contention that his oral statements were improperly admitted into evidence over his objection.

As a general rule, oral confessions are not admissible in Texas. *Jimmerson v. State,* 561 S.W.2d 5 (Tex.Cr.App.1978). The Code of Criminal Procedure addresses the very limited circumstances under which oral statements may be admitted into evidence. Tex.Code Cr.P.Ann. art. 38.22 (1977 and Supp.1987). Article 38.22 § 3(a) provides that no oral statement of an accused made as a result of custodial interrogation is admissible unless electronically recorded in conformity with this statute. Oral statements which contain assertions of fact or circumstances which are found to be true "and which conduce to establish the guilt of the accused" are admissible, however, under art. 38.22 § 3(c), even though they result from custodial interrogation. Also,

article 38.22 § 5 specifically authorizes admission of an oral statement made by an accused, whether or not recorded, which does not result from custodial interrogation.

Of appellant's various oral statements described at the suppression hearing, only two were admitted into evidence: the "spontaneous" statement made to Officer Sauceda as she was driving Port to the police station, and his identification upon arrival at the station of the .22 pistol as the murder weapon. There is no question that Port was in custody when these statements were made and that the statements were not recorded. The first inquiry then is whether or not the statements stemmed from custodial interrogation. If they did not, the statements were admissible under art. 38.22 § 5. If the statements resulted from custodial interrogation, however, then the question is whether the statements contained assertions found to be true and which conduced to establish Port's guilt, thus rendering them admissible under the exception set forth in art. 38.22 § 3(c). If the oral statements did not meet this limited exception, they were inadmissible.

■ The appellant contends that his statements to Sauceda were part of one continuous confession which stemmed from custodial interrogation initiated immediately after his arrest and, therefore, were not admissible under art. 38.22 § 5. Appellant further argues that the oral statements he made as a result of his custodial interrogation are inadmissible because they did not lead to new evidence or information previously unknown to the State which conduced to establish his guilt as required by art. 38.22 § 3(c). We must agree with both contentions.

The State concedes that all of Port's statements from the time of his arrest throughout the afternoon were part of one continuous confession, but not interrogation, and contends that all of his statements, including those segments excluded

by the trial court, were admissible because portions later were found to be true and confirmed appellant's guilt, bringing them within the exception of art. 38.22 § 3(c). In addition, the State contends that the first statement by appellant to Sauceda while in her police car was admissible under § 5 because it was volunteered and not the result of custodial interrogation.

The trial court found that Port's statements throughout the afternoon did not constitute one continuous confession. The court further found that none of the statements made by Port to Sauceda from the time he got into her car until after he identified the murder weapon upon arrival at the police station resulted from custodial interrogation. Apparently, the court determined that these statements were admissible under art. 38.22 § 5. The trial court also found that these same statements provided information to the police not then known to them which further investigation proved to be true. This finding would only be pertinent, however, if these statements indeed were made as a result of custodial interrogation and also conduced to establish Port's guilt. In that event, these statements also must have been made in compliance with *Miranda v. Arizona, supra.*

■ Where an accused in custody spontaneously volunteers information which is not in response to earlier interrogation by authorities, the statement is admissible even though not recorded since it is not the product of custodial interrogation. *Stevens v. State,* 671 S.W.2d 517 (Tex.Cr.App. 1984); *Chambliss v. State,* 647 S.W.2d 257 (Tex.Cr.App.1983); *Sanchez v. State,* 589 S.W.2d 422 (Tex.Cr.App.1979). Here, the police took appellant into custody, and immediately after appellant was given his *Miranda* rights, he was asked: "Did you kill the female mail carrier?" This question initiated a continuous dialogue between appellant and police from the time of his arrest until the time appellant left the bayou in Sauceda's car. In response to this

questioning, the appellant gave a full confession. Appellant's statements during this time were made in response to police questioning while he was in custody and thus clearly resulted from custodial interrogation.

Sauceda did not give appellant another *Miranda* warning at the beginning of the trip to the police station. Once the appellant left the bayou with Sauceda, nothing was said between the two for about ten minutes until appellant, without further prompting by Sauceda, again explained to her in more detail how he had killed Schatz. The question is whether this break in time and change of surroundings caused the spontaneous oral statement made to Officer Sauceda to be sufficiently independent of the earlier questioning by police, so as to conclude that this oral statement by Port did not stem from his earlier interrogation.

■ The term "interrogation," as defined in *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), refers not only to express questioning, but also to its functional equivalent, any words or actions on the part of police that the police should know are reasonably likely to elicit an incriminating response. As further stated in *Innis, supra,* "interrogation" as conceptualized in the *Miranda* decision must reflect a measure of compulsion above and beyond that inherent in custody itself. Therefore, an accused's statement may stem from interrogation even if the statement is not made in immediate response to an express question by police.

In *Marini v. State,* 593 S.W.2d 709 (Tex. Cr.App.1980), the court stated that the term "confession" must be broadly construed to include later incriminating outbursts. In *Marini,* a murder suspect was interrogated by police and denied that he had shot the victim, but implicated another person. The suspect then told police that to prove his story, he would take police to "the money and the dope." The suspect then led police to the parking lot of his

apartment house, where $3250 taken from the victim was found in his car. The police then asked the suspect if he wanted to discuss the matter further, whereupon the suspect declared, "I did it. I did it. I did it. I shot him." *Id.* at 712. The State argued that the statement was admissible under then art. 38.22 § 1(e) (now art. 38.22 § 3(c)), since the confession led to new evidence and contained facts that were found to be true and which conduced to establish the suspect's guilt. The defendant argued that since the cash in his car had been found just prior to his incriminating statement, his statement could not have led to its finding. The Court held that the incriminating statement was part of one continuous confession made in segments which had begun at the police station, and therefore, the confession, viewed in its entirety, led to the discovery of the money taken from the victim. *Id.* at 713. So long as § 3(c) is satisfied at some point in the confession, the entire continuous statement is admissible.

The Court in *Marini* did not discuss the definition or scope of interrogation. However, in stating that the term "confession" must be broadly construed to include later incriminating outbursts, it recognized a relationship between statements made by an accused during the early stages of interrogation, and statements made later. The Court of Criminal Appeals has also held that there is a presumption that the same force which produced an earlier confession is still in operation when a later confession is given. *Wechsler v. State,* 361 S.W.2d 379 (Tex.Cr.App.1962).

The State cites *Marini* in support of its position that all segments of appellant's statements were admissible, including those actually introduced. Marini's entire confession, however, was admissible because his replies to their questions led police to the money taken from the deceased victim. In a footnote, the Court distinguished this situation from one in which the entire confession is inadmissible when nothing is discovered by the police as the result of the accused's replies to their questions. *See, Marini,* 593 S.W.2d at p. 713, footnote 2, citing *Smith v. State,* 514 S.W.2d 749 (Tex.Cr.App.1974). No physical evidence was discovered as a result of Port's oral statements, nor is this a case where appellant's oral statements were found to be true and led to the discovery of any evidence conducing to establish his guilt. *Smith v. State, supra.*

When an accused's statement is made before any questioning is initiated concerning the crime for which the accused is in custody, the courts have held that the statement did not stem from custodial interrogation. In *Earnhart v. State,* 582 S.W.2d 444 (Tex.Cr.App.1979), the accused was placed under arrest for murder, but before he was given his *Miranda* warnings, the accused picked up a shirt and began to put it on, then stated, "Its got blood on it. I want to get a clean one." The court held that the statement was not made in response to any police inquiry and therefore was admissible. *Id.* at 448. It was clear in *Earnhart* that the police had not propounded any inquiries to the accused prior to his voluntary statement.

In *Schuessler v. State,* 647 S.W.2d 742 (Tex.App.1983, rev'd on other grounds), 719 S.W.2d 720 (Tex.Cr.App.1986), the accused was arrested and placed in custody for a traffic violation. After officers inquired as to his relatives and marital status, the defendant orally stated that he had killed his daughter. The Court held that the statement was made voluntarily and not in response to interrogation. *Id.* at 747. Even though the officers were questioning the defendant before he made the statement, the questioning did not concern the crime for which he was later charged, nor could the officers have reasonably anticipated such an incriminating response since they knew nothing of the daughter's murder.

By contrast, there is no dispute here that the police initiated a fifteen minute interrogation of Port immediately after his

arrest, and that appellant immediately responded by confessing to the murder about which he was being questioned. It is also not disputed that police officers and appellant then carried on a dialogue for an additional 10 to 20 minutes in the car and at the bayou in an attempt to locate the body. While Port's statement made ten minutes thereafter to Officer Sauceda while driving downtown may not have been a response to a direct question to him, we cannot say under the circumstances that it was made independently of the original interrogation. This statement was made too close in time and proximity to the earlier interrogation, and was too similar in substance to Port's earlier statements, for us to say that it was not the product of the same interrogation. Furthermore, it is doubtful that the spontaneous statement would have been made to Sauceda but for the earlier questioning initiated by the police, and the resultant confession. Since appellant, in response to police questioning, already had confessed in Sauceda's presence, he had no reason to remain silent. His statement in the car can only reasonably be viewed as a continuation and clarification of his prior admission. The statement in the car contained no new information other than that he may have "hit her" twice. Indeed, the statement makes little sense unless coupled with his earlier admission that he shot and killed the postal carrier. Like *Marini*, we hold that the oral statement made to Sauceda on the way to the police station was part of one continuous confession given in response to custodial interrogation.

■ Upon arrival at the police station, Sauceda removed the suspected murder weapon from the trunk and carried it in such a way as to permit Port to observe the gun. He asked whether the gun was his. Sauceda asked Port whether he recognized the gun and he answered that it was the one he used for the murder. Port's statement was a response to a direct question designed to elicit the incriminating response received. The statements Port gave about the pistol's identification were clearly the result of custodial interrogation or its equivalent. *Rhode Island v. Innis, supra; See* also *Wortham v. State,* 704 S.W.2d 586 (Tex.App.1986, no pet.).

The State next contends that even if Port's oral statements resulted from custodial interrogation, they were properly admissible under art. 38.22 § 3(c) (Supp.1987), because the statements contain assertions of facts or circumstances found to be true and which conduce to establish the guilt of the accused. The Court of Criminal Appeals has construed this exception to mean that the statement must *lead* to the discovery of items or information not previously discovered by the State, and also must be incriminating. *McGilvery v. State,* 533 S.W.2d 24 (Tex.Cr.App.1976); *Chase v. State,* 508 S.W.2d 605 (Tex.Cr. App.1974), *cert. denied* 419 U.S. 840, 95 S.Ct. 71, 42 L.Ed.2d 68 (1974).

The State argues that courts have ruled that the statement must lead to the discovery of items or information not previously known by the State simply because that is the most common situation in which such statements come under the art. 38.22 § 3(c) exception. The State contends that the oral statement need not *lead* to newly discovered evidence, such as the victim's body or the murder weapon, so long as the statement contains information which is later confirmed to be true. The State argues that in addition to the accused's statement leading to corroborative evidence, an accused's oral statement is admissible under § 3(c) if the police later independently discover items or confirm information which corroborate the appellant's oral statement. For example, an accused admits he shot a victim with a particular gun in the State's possession, and ballistics tests later prove the gun identified is indeed the murder weapon. While the present case might make such a rule desirable, prior court rulings concerning this matter do not support this proposition. In *Chase v. State, supra,* the court stated that the cases dictate that art. 38.22 § 1(e) (now § 3(c)) "requires that some evidence be found *as a*

*result* of the defendant's statement which bolsters the reliability of the facts and circumstances in the statement that conduce to establish guilt." *Id.* 508 S.W.2d at 609. (emphasis added). The case law is clear that the oral statement itself must lead to the discovery of evidence tending to establish the accused's guilt. *Scott v. State,* 564 S.W.2d 759 (Tex.Cr.App.1978); *Presswood v. State,* 548 S.W.2d 398 (Tex.Cr.App.1977); *McGilvery v. State, supra.*

The State argues that appellant's statement that "... I know I hit her at least two times" corroborated the later finding that the victim had been shot twice. However, this statement by appellant did not lead the authorities to the discovery that the victim had been shot twice. Before Port's arrest, the authorities already suspected that he had shot Schatz with the .22 taken from his room. Police found the victim's body independently of any information provided them by appellant, and upon discovering the body, they then independently discovered that Schatz had been shot twice.

The State argues that appellant's identification of the .22 caliber pistol as the one he used corroborated that this pistol was the murder weapon. However, the police already suspected this to be the weapon fired before appellant even identified the gun. The State, through its own testing, independently determined the .22 caliber pistol to be the murder weapon. Appellant's statement identifying the pistol merely bolstered his continuing oral confession that he committed the crime, but in no way led to the discovery of items or information not previously known by the State. However frustrating the result may be, under Texas law such oral statements cannot be used in evidence against an accused. There was no evidence found *as a result* of appellant's oral statements which confirmed the reliability of the facts and circumstances in his statement such to permit the oral statement to be admissible.

At the time Port was arrested, the police suspected that he had shot Schatz in his home with the .22 pistol in their possession.

Port's confession only confirmed their belief and led to no new evidence or information found to be true which tended to establish Port's guilt. The State does not claim Port's statements were *res gestae* of the offense and we do not address that matter.

Since Port's statements stemmed from custodial interrogation and did not lead to the discovery of any evidence found to be true conducing to establish appellant's guilt as required, the statements were inadmissible. We cannot say the error in admitting the oral statements was harmless. *Smith v. State, supra.* In considering whether the admission constituted harmless error, we must look to whether there is a reasonable probability that the evidence might have contributed to appellant's conviction or to the punishment assessed. *Maynard v. State,* 685 S.W.2d 60 (Tex.Cr.App.1985). Since Port's statements were the only direct evidence of his guilt in the record, it is reasonable to assume that his own statements likely contributed to his conviction and the lengthy sentence. We cannot say the admission was harmless beyond a reasonable doubt. *See also McCrory v. State,* 643 S.W.2d 725 (Tex.Cr.App.1982).

The trial court's judgment of conviction is reversed and the cause is remanded for a new trial consistent with this opinion.