CITY OF LOUISVILLE, Appellant,

v.

MICHAEL A. WOODS, INC., d/b/a The Godfather; Envy, Inc., d/b/a Dancers West; Tiffany's, Inc.; and Baker Tinsley and Robert Allen, Inc., d/b/a Green Light Lounge, Appellees,

and

MICHAEL A. WOODS, INC., d/b/a The Godfather; and Envy, Inc., d/b/a Dancers West, Cross–Appellants,

v.

CITY OF LOUISVILLE, Cross–Appellee,

and

Lee KRUGLER, Baker Tinsley, Gwendolyn K. Durbin, Barbara E. Burton, Christine Repp, Jean Lee, and Erica Coyle, Appellants,

v.

COMMONWEALTH of Kentucky, Appellee.

92–CA–1529–S, 92–CA–1712–S, 92–CA–1761–S

Court of Appeals of Kentucky.

May 21, 1993.

Discretionary Review Denied By Supreme Court Oct. 19, 1994 in No. 92–CA–1761.

John Michael Brown, Scot D. Ramsey, Wyatt, Tarrant & Combs, Christine Heavrin, Director of Law, City of Louisville, Louisville, for City of Louisville.

Michael R. McMahon, Louisville, for Michael Woods, Inc.; Envy, Inc.; and Lee Krugler.

C. Michael Hatzell, Hatzell & Groves, Louisville, for Tiffany's, Inc., Baker Tinsley, and Robert Allen.

Harriet L. Allen, C. Michael Hatzell, Louisville, for Baker Tinsley, Gwendolyn Durbin, Barbara E. Burton, Christine Repp, Jean Lee, and Erica Coyle.

Chris Gorman, Atty. Gen., John Michael Brown, Louisville, for Commonwealth of Kentucky.

Before GARDNER, HOWERTON and SCHRODER, JJ.

HOWERTON, Judge.

The City of Louisville appeals from a judgment of the Jefferson Circuit Court, Second Division, in which Judge Edmund P. Karem declared City of Louisville Ordinance § 111.-053 invalid as being in conflict with KRS 244.120 and 804 KAR 5:060. The cross-appellants, Michael A. Woods, Inc., d/b/a The Godfather; and Envy, Inc., d/b/a Dancers West, present an issue we need not consider. They complain that the trial court denied their motion to alter the judgment and declare additional ordinances invalid. The trial court did not decide the issues, and we will indicate now that we affirm as to the cross-appeal.

Lee Krugler, Baker Tinsley, Gwendolyn Durbin, Barbara Burton, Christine Repp, Jean Lee, and Erica Coyle appeal from a judgment of the Jefferson Circuit Court, Fifth Division. In that case, Judge Earl O'Bannon reversed an opinion of District

Judge William P. Ryan, Jr., which had declared Louisville Ordinance § 111.053 invalid and unenforceable. Additional parties were involved in the district and circuit court cases, but only those named above have appealed the reversal which exposed them to liability for violation of the city ordinance.

These cases have had a strange trip through the courts of Jefferson County. The Commonwealth attempted to prosecute some owners, managers, and dancers who were charged with violating Ordinance § 111.050. District Judge Ryan dismissed the charges and declared the ordinance invalid and unenforceable on January 8, 1991. The Commonwealth appealed, and Circuit Judge O'Bannon reversed that decision on November 27, 1991. The case remained open, however, until June 22, 1992, when he denied a motion to amend or vacate. We granted discretionary review.

The declaratory judgment action was decided in Judge Karem's court on June 17, 1992, and Judge Karem's opinion adopted the opinion of District Judge Ryan, which had already been reversed by Judge O'Bannon. Judge Karem wrote, "[i]t [Judge Ryan's opinion] speaks with such clarity on the issue that in the interest of judicial economy this Court adopts the opinion of Judge Ryan. . . ." While we will acknowledge that Judge Ryan's opinion is well-written, we can only conclude that as to clarity, it is clearly erroneous. We therefore reverse in Appeal No. 92–CA–1529–S and affirm in Appeal No. 92–CA–1761–S.

Although some parties attempt to present other constitutional issues involving such things as free speech and discrimination, we note that none of the questions have been addressed by the trial courts, and we will consider only one issue. The only issue before us is whether Louisville City Ordinance § 111.053, which forbids nude or nearly-nude activities on ABC Board licensed premises in the City, is in "conflict" with a "comprehensive scheme" of state regulation, and therefore void and unenforceable pursuant to the Kentucky "home rule" statute, KRS 82.082. The owners, managers, and dancers argue that it is, while the Commonwealth and the

City of Louisville argue that it is not. We agree that it is not.

KRS 82.082 provides in pertinent part as follows:

(1) A city may exercise any power and perform any function within its boundaries . . . that is in furtherance of a public purpose of the city and not in conflict with a constitutional provision or statute.

(2) A power or function is in conflict with a statute if it is expressly prohibited by a statute or there is a comprehensive scheme of legislation on the same general subject embodied in the Kentucky Revised Statutes including, but not limited to, the provisions of KRS Chapters 95 and 96.

KRS 244.120(1) reads, "[n]o person licensed to sell alcoholic beverages at retail shall cause, suffer, or permit the licensed premises to be disorderly." Section (2) defines some acts which might constitute a disorderly premise, but none mention anything about how one's body is clothed or unclothed. In furtherance of this statutory requirement, the ABC Board adopted Administrative Regulation 804 KAR 5:060 which concerns entertainment requirements and reads in part as follows:

NECESSITY AND FUNCTION: The types of entertainment provided by licensees of this department on the licensed premises varies widely throughout the state. The licensees of the smaller towns offer little or no entertainment and the metropolitan areas offer everything from strolling violin players to go-go dancing. It is, therefore, necessary for this board to prohibit certain types of entertainment on licensed premises which could be considered improper or immoral.

Section 1. No licensee shall knowingly or willfully allow in, upon or about his licensed premises lewd, immoral or obscene entertainment, activities or advertising materials including, but not limited to public display of actual or simulated sex acts, or the fondling or touching of genitalia or of the female breast.

This is the so-called "comprehensive scheme" by the legislature to regulate some conduct in licensed premises selling alcoholic beverages. We will make no attempt to interpret

what is meant by "lewd, immoral or obscene entertainment," but we note that the language of this section also reads, "including, but not limited to," and then it mentions displays of actual or simulated sex acts or the fondling or touching of genitalia or of the female breast. The mere language of "including, but not limited to" indicates that there is room for more regulation or at least more specifics for the prohibited "lewd, immoral or obscene entertainment." We also note in the preamble declaring the necessity of the regulation that different cities and different size cities may very well desire to have more restrictive prohibitions on what entertainment is allowed in establishments serving alcoholic beverages.

Cities are required by statute to have an alcoholic beverage administrator. KRS 241.170 provides that the administrator shall have the same qualifications as a board member and that the administrator will have full police powers and may inspect any premises where alcoholic beverages are manufactured, sold, stored, or otherwise trafficked in without a search warrant. KRS 241.190 further provides that the functions of a city administrator shall be the same with respect to city licenses and regulations as the functions of the board with respect to state licenses and regulations. This statute also reads "that no regulation adopted by a city administrator may be less stringent than the statutes relating to alcoholic beverage control or than the regulations of the board." This would indicate clearly that cities may pass regulations concerning city licenses and that they may be more stringent than state statutes and regulations.

As a general rule, "home rule" included, a city may pass ordinances that are in addition to, yet not inconsistent with, state statutes and constitutional provisions. Louisville City Ordinance § 111.053 appears to be just such an ordinance. It reads:

(A) No person shall perform or appear on a licensed premises in a manner or attire as to expose to public view of the patrons of the establishment at any time the bare female breast below a point immediately above the top of the areola, human genitals, pubic region or buttocks, or male genitals in a discernible, turgid state, even if completely and opaquely covered, or employ any device or covering intended to give the appearance of or simulate male or female genitals, pubic region, buttocks or female breast below a point or immediately above the top of the areola.

(B) No licensee, employee, or agent thereof shall permit any person to perform or appear on its premises in a manner or attire as to expose to public view of the patrons of the establishment at any time the bare female breast below a point immediately above the top of the areola, human genitals, pubic region or buttocks, or human or simulated male genitals in a discernible, turgid state, even if completely and opaquely covered, or permit any person to employ any device or covering intended to give the appearance of or to simulate male or. female genitals, pubic region, buttocks or female breast below a point immediately above the top of the areola.

As we read the foregoing statutes and ordinance, and consider the state "scheme," . we simply cannot conclude that the state has completely preempted all local action relating to conduct in places serving alcoholic beverages. The statutes concerning alcoholic beverages seem to not only give cities the opportunity to regulate conduct in such establishments, but require that standards be maintained. The ABC Board has acknowledged that different cities will have different standards, and the Board's regulations were to present at least some minimum standards. We find no prohibition against a city invoking stricter standards of conduct in places serving alcoholic beverages. We conclude that no conflict exists as is proscribed in KRS 82.082(2).

The owners, managers, and dancers rely primarily on *Whitehead v. Estate of Bravard,* Ky., 719 S.W.2d 720 (1986), where the Kentucky Supreme Court invalidated a local ordinance which limited the number of alcoholic beverage licenses which could be issued. We find no real parallel between *Whitehead* and the case at bar. In *Whitehead,* the state licensing board issued a license contrary to the number provided for in the ordinance. This was a direct conflict, whereas the Louis-

ville ordinance in question merely places additional, stricter, and more explicit restrictions on conduct permitted in businesses selling alcoholic beverages. Furthermore, in *Whitehead,* the issue dealt with such things as licensing and selling as opposed to conduct. The state regulation in this case provides that no licensee shall allow "lewd, immoral or obscene entertainment [whatever that means] ... including, but not limited to, public display of actual or simulated sex acts, or the fondling or touching of genitalia or of the female breast." The ordinance does not conflict with or usurp the state's "scheme." It is merely in addition to what the state has attempted to provide as a minimum standard, and there is nothing to prevent a local government from establishing minimum standards of conduct permissible in its own territory. The preamble to the regulation acknowledges this fact also.

The opponents of the ordinance also rely on *Lewis v. Ken–Pad,* Ky., 716 S.W.2d 252 (1986), and *Pierce v. Commonwealth,* Ky., 777 S.W.2d 926 (1989). We fail to see any real relevance in either of these cases. No city ordinance nor the "home rule" statute were involved in *Lewis.* In that case, the ABC Board had revoked the license of an alcoholic beverage establishment on a finding that some of its hostesses were soliciting for prostitution. The question resolved was whether KRS 244.120, which said nothing about lewd conduct as being disorderly or prohibited, authorized the enactment of 804 KAR 5:060. The Supreme Court held that the regulation was authorized and that enforcement was proper. In *Pierce,* the City of Florence had redefined the elements of soliciting to commit sodomy and created penalties which were four times greater than those provided by state statute. We would completely agree that the Supreme Court was correct in stating that the City of Florence had violated the "home rule" statute and had produced an ordinance which was in conflict with the state statute.

The fact of preemption by the state does not always create a conflict with a municipal ordinance or regulation on the same subject matter. In *Commonwealth v. Do, Inc.,* Ky., 674 S.W.2d 519, 522 (1984), we read:

Municipal regulation is not always precluded simply because the legislature has tak-

en some action in regard to the same subject.... The true test of concurrent authority is the absence of conflict. Here cooperative authority is extremely valuable and in the best interests of the public. The mere fact that the state has made certain regulations does not prohibit local government from establishing additional requirements as long as there is no conflict between them.

*Do* involved the Jefferson County sanitary code. In that area of the law, just as with control of alcoholic beverage establishments, there is much room for the exercise of police power, and the state has encouraged and somewhat required local government to participate in and provide regulation for control. So long as the local ordinance is also reasonable, there should be no problem.

For all of the foregoing reasons, we find no conflict between Louisville City Ordinance § 111.053 and 804 KAR 5:060 and KRS Chapters 241 and 244, and we find no violation of KRS 82.082. The judgment of the Jefferson Circuit Court is reversed in Appeal No. 92–CA–1529–S and it is affirmed in Cross–Appeal No. 92–CA–1712–S and Appeal No. 92–CA–1761–S.

All concur.